.JOHNSON *vs*. THE GEORGIA MIDLAND AND GULF RAILROAD
COMPANY.  WILLIAMSON *vs*. the same.

1. Notes given by a subscriber for capital stock in a railroad corpora-
tion, each note being given for an instalment of his subscription, and
each being payable on completion of a twenty miles section of the
road, ".ready for the cross-ties, trestles and bridges," of which
completion publication in a newspaper by the board of directors
was to be conclusive notice, were mature and payable so soon  as
such publication was made, although the notes described the rail-
road as one which was to have a certain privilege, and although
such privilege has not yet been secured.  The securing of such priv-
ilege was not a condition precedent to payment for the stock.  The
specification of the privilege was part of the description of the rail-
road as it was to be ultimately, but not as it was to be at maturity
and payment of the subscriptions to the capital stock.
2. Though it is specified in the notes that the road is to be operated
independently of a certain existing railroad, this relates to what is
to be done after the notes are paid, not before.
3. Though to procure the subscription, the corporation contracted that
a side-track would be constructed upon the premises, or "at the
place," of the subscriber, this stipulation contemplated that the
side-track would be constructed after the payment, there being no
agreement that its construction was to be a condition precedent.

January 21, 1889.

Promissory notes.  Railroads.  Stock and stockholders
Contracts.  Before Judge BOYNTON.  Spalding superior
court.  August term, 1888.

Reported in the decision.

E. W. HAMMOND and T. R. MILLS, for plaintiffs in error.

STEWART & DANIEL and HALL & HAMMOND, *contra*.

BLECKLEY, Chief Justice.

1. The first question is, whether the notes or contracts
sued upon were mature when the suits were brought.
The stipulation on the subject of maturity is that the
money

"becomes due and payable whenever the board of directors of said railroad company shall decide that the . . . . section of twenty miles, (starting at some point on E. T., Va. & Ga. railroad, either in Henry or Butts county, Ga.) or of so many miles as is necessary to complete a railroad of not less width than a standard gauge, between Columbus, Ga., and some point on the E. T., Va. & Ga. railroad, with the privilege of entering Atlanta, Ga., on the track of any railroad with terminal facilities there, is graded and ready for the cross-ties, trestles and bridges. Publication of said decision of said board of directors, in any newspaper published in Griffin, Ga., shall be final and conclusive notice to me of the same."

We have studied carefully this somewhat confused and involved language, and our construction of it is, that the only matter constituting the substance of the condition precedent and forming the question for the board of directors to decide and give notice of their decision by publication in a newspaper, was the completion of the contemplated railroad, "ready for the cross-ties, trestles and bridges."

There was no stipulation that the privilege of entering Atlanta was to be secured before the notes became payable. The clause relating to that privilege was introduced to describe the railroad as it was to be ultimately, not as it was to be at the maturity and payment of the subscriptions to the capital stock. It might be that the money sought to be raised from these subscriptions would be needed for the very purpose of securing the privilege in question, just as it might be needed for the purpose of carrying on to completion the unfinished railroad beyond the stage of readiness for cross-ties, trestles and bridges. We think the published decision of the board comprehends all that was essential either to be done or decided as a condition precedent to the payment of these notes. The pleas as expounded here raised no question as to the fact that completion was so far advanced as to prepare the road for the cross-ties, trestles and bridges. The matter of complaint was, that the

privilege of entering Atlanta had not been secured. Under the evidence, we think it had not been, for a mere proposal on the part of the East Tennessee, Virginia & Georgia Railroad Company, stating terms, etc., would not suffice for a privilege on the part of the new railroad, unless the terms had been accepted; and it seems no acceptance had taken place. But while we think that the privilege was unsecured, we are nevertheless of opinion that the maturity of the notes was not on that account postponed.

2. Nor would it affect the maturity of these contracts were the new road not operated entirely independently of the Central Railroad. Certainly how the road was to be operated was not intended to be a condition precedent to payments that were to be made before it was operated at all, and even before it was in a state in which it could be operated. No railroad is ready for operation in advance of laying down the cross-ties and constructing the trestles and bridges. Yet the stipulation here was to pay when the line lacked these requisites and all others which were to be supplied later if the board of directors made the stipulated decision and published it in the appointed way. How the railroad was to be operated related to a matter that was to occur after the notes were paid, not before. This being so, the mode of operation cannot be construed as a condition precedent. But even did it bear that construction, the evidence, we think, indicated that whilst there are amicable relations and business arrangements between the two roads, their respective operations are wholly separate and independent.

3. What has been said above, disposes substantially of both of these cases, save as to the one point in that of Williamson, which relates to the alleged agreement to lay down a side-track upon his premises or his place.

It is not suggested that it was any part of that agreement that this work was to be done at any specified time, much less that it was to be done before he paid his money. It may be that his money is needed for the very purpose of performing this engagement. If he had wanted the side-track before his notes matured, he should have contracted to get it before, and not, as he did contract, to pay when the road itself was ready for the cross-ties, etc. If authority were needed to show that this matter as it stands was not a condition precedent, the cases of Chamberlin *vs.* Painesville Railroad Company, 15 Ohio St. 225, and Paducah & M. R. Co. *vs.* Parks, by the Supreme Court of Tennessee, 8 S. W. Rep. 842, would be sufficient. Moreover, the difficulty of supplying such a condition by parol evidence without some averment that it was left out of the writing by fraud, accident or mistake, would seem insuperable. *Henderson vs. Thompson,* 52 *Ga.* 149, and numerous other cases.

Judgment affirmed.