WARREN COUNTY CO-OPERATIVE ASSOCIATION COMPANY
v. W. B. BOYD.

(Filed 15 March, 1916.)

**1. Corporations—Subscriptions—Special Terms—Conditions Precedent—Liability of Subscriber.**

One who before the enactment of Laws of 1915 gives his subscription note to a corporation for shares to be issued, conditioned that the proposed corporation should do business according to a certain system, the Rochdale system in this case, subscribes thereto on special terms, sometimes called conditions subsequent, and where the corporation has been duly organized, the character of the subscription does not affect the subscriber's liability to take or pay for his shares, but gives him in certain instances a right of action against the corporation for damages upon its failure to perform the conditions. *Semble*, chapters 144 and 115, Laws 1915, do not change the application of this principle.

**2. Same—Other Stockholders.**

In order for the conditions of a subscription upon special terms to the stock of a corporation to be enforcible, they must not be in contravention of public policy or the provisions of the general law or of the special charter, or in fraud of creditors or the just legal rights of the other stockholders.

**3. Same—Equal Burdens.**

Where one has subscribed in special terms, or upon conditions subsequent contained in his subscription note, to the stock of a corporation prior to 1915, and it appears that this was unknown to the other subscribers to the stock, who regularly subscribed without such condition, and that the corporation had been organized and the business conducted for which it had been formed upon the plan specified in the note, but subsequently changed to meet business contingencies, and was operating at a loss, though at present its assets exceeded its liabilities: *Held*, such subscriber may not avoid paying for his stock on the ground that the condition of his subscription had not been complied with, as against the rights of the other subscribers who had paid in full, for such would enhance their burdens in violation of the equality of obligation which should prevail amongst those who embark in a common enterprise. *Semble*, chapters 144 and 115, Laws 1915, do not change the application of this principle.

**4. Corporations—Subscribers—Release.**

Where a corporation has been formed and the obligation of a subscriber to its stock has become absolute, the refusal of its management to presently accept his tender of payment for the shares for which he has subscribed does not release him from his obligation to take and pay for them.

CIVIL ACTION heard on appeal from recorder's court of WARREN, before *Stacey, J.,* at January Term, 1916, of the Superior Court of said county.

A jury trial was waived, and the material facts as found by the court, and his Honor's judgment thereon, are as follows:

1. That the plaintiff is a corporation duly created, organized, and existing under and by virtue of the laws of the State of North Carolina; and under its charter was authorized to begin business when $200 of its capital stock was subscribed and paid in.

2. That the said corporation was duly organized and began business on or about 4 April, 1914, the requisite number of shares of stock for its organization having been subscribed at that time.

3. That on 16 May, 1914, sixty-one shares of stock of the par value of $25 per share of said corporation had been issued and paid for by the different subscribers, and that the total issue of stock at the present time amounts to sixty-eight shares, representing a paid-in capital of $1,700.

4. That prior to the organization of the said corporation, the defendant subscribed to one share of stock in the said company, and executed and delivered to plaintiff his sealed promissory note in words and figures as follows, to wit:

$25.00                    WARRENTON, N. C., 16 March, 1914.

On demand after date (without grace), I promise to pay to the order of Warren County Coöperative Association Company $25, with interest at the rate of 6 per cent per annum after maturity, for one share of stock in the above named association. It is agreed by the acceptance of this note that this subscription is to be used to do business on the "Rochdale" system, and for this purpose only; otherwise, this note is to be null and void, and if already paid, the amount above subscribed shall be returned to W. B. Boyd in case the company shall fail to raise the amount necessary to do business on this plan on or before 16 May, 1914.

No.................    Due...................., 191....

(Signed)   W. B. Boyd.   [SEAL]

Witness:
(Signed) J. F. HUNTER.

5. That the officers and agents of the said corporation conducted the business of the concern in a manner which they *bona fide* believed to

be the "Rochdale" system, though the secretary and treasurer admitted that he did not know what the "Rochdale" system was, except what he had been told, which information was at variance with the definition contained in the Encyclopedia Brittanica, offered in evidence by defendant without objection.

6. That the defendant was present at a meeting of citizens when the organization and chartering of the company was proposed; subscribed to one share of stock, and was selected by those present to act as one of the directors. The defendant subsequently declined this office, and another was chosen in his stead.

7. That several weeks after the organization of the plaintiff company the defendant called upon the manager, W. A. Connell, who was also secretary and treasurer of the plaintiff company, and offered to pay his note upon delivery of the stock for which he had subscribed. The said officer did not accept payment from the defendant, and declined to deliver his stock, on the grounds that according to the by-laws of the company the stock was to be issued to members of the Warren County Farmers' Union and nonmembers of said union in the ratio of 6 to 4, and that no further stock could be issued to nonunion men until other union members took their stock, so as to keep the said proportion constant. That several months thereafter several union men paid their subscriptions, and demand was then made upon the defendant for the payment of his note—at which time, however, it was a foregone conclusion that the company was destined to be a financial failure.

8. That the officers and manager of the plaintiff company understood and believed that the "Rochdale" system required their keeping an account and list of all customers and the amount of their purchases; that after the business had been run for some time the directors instructed the manager to meet competition; after which time the manager, seeing that there would be no profits, but that the company would sustain a loss, failed to keep a correct list of all said customers, though a record of each member's purchases had been kept up to that time. No demand was made upon the defendant for payment of his note until after this change in the method of keeping said accounts by plaintiff's business manager.

9. That the assets of the plaintiff company now on hand consist of machinery, wagons, buggies, harness, etc., and notes taken for goods sold, totaling $1,703.67; and that the liabilities of said company (exclusive of shares of stock issued) amount to $1,450, which, with outstanding stock, makes a total of $3,150.

10. That twenty-five shares of stock have been subscribed by different persons, of which class the defendant is one, and which have not been paid, demand having been made therefor and payment refused.

11. That no creditor or creditors of the plaintiff company are parties to this suit, but the same is brought to enable plaintiff to pay its debts.

Upon the foregoing facts the court being of opinion that the officers and directors of the plaintiff company had contracted debts upon the strength of the stock subscribed by the defendant and other parties, and that the assets of the plaintiff company are insufficient to pay its liabilities, including the amount represented by stock issued, considers the defendant's promissory note a binding obligation, and that he is entitled to his stock certificate upon payment of same.

It is now, therefore, ordered, adjudged, and decreed that the plaintiff recover of the defendant the sum of $25, together with the cost of this action, to be taxed by the clerk.

To said findings and judgment defendant excepted and appealed.

*B. B. Williams for plaintiff.*
*Tasker Polk and T. T. Hicks for defendant.*

HOKE, J. The facts showing that the defendant subscribed for one share of stock, in pursuance of a plan and purpose to form a corporation, which was afterwards carried out, the company being thereafter regularly organized and doing business, he thereby became a subscriber, and, taken in connection with the note given in evidence of his obligation, this was what is known as a subscription on special terms, sometimes said to be on condition subsequent, defined by Beach on Corporations and other writers as one "which does not affect the subscriber's liability to take and pay for his shares, but which gives him a right of action against the corporation upon its failure to perform," etc. 1 Purdey's Beach on Corporations, secs. 233.

It is well understood that a subscription of this kind may be made, and that the conditions will, to a certain extent, be enforced; the limitation being that these may not be in contravention of public policy or the provisions of general law or of the special charter, and are not in fraud of creditors or the just legal rights of the other stockholders. Clark and Marshall on Corporations, p. 1447; 1 Thompson on Corporations, sec. 625; 1 Cook on Corporations, sec. 83; Clark on Corporations, page 302, and sec. 170, etc. In Clark and Marshall it is said: "In general, a subscription upon special terms is an absolute and unconditional subscription which makes the subscriber a stockholder and renders him liable as such, and for the amount of the subscription as soon as it is accepted, but contains special terms and stipulations. Such a subscription is valid, provided the special terms or stipulations are not such as to constitute a fraud upon the other subscribers or stockholders or upon the creditors of the corporation, and provided they are not beyond the powers conferred upon the corporation by its charter, nor contrary to law."

In Clark on Corporations, *supra,* the same position is stated thus:

"Subscriptions upon special terms are valid except—

"*a.* Where the stipulations are *ultra vires,* or inconsistent with the charter or articles of incorporation.

"*b.* Where they operate as a fraud upon the other shareholders by subjecting the subscriber to lighter burdens or giving him greater rights and privileges.

"*c.* Where they operate as a fraud upon the creditors of the corporation who contract with it on the faith of the capital stock being fully paid."

On the record there is no definite finding as to the meaning of the condition appearing on the face of defendant's note, "that the subscription is to be used to do business on the Rochdale system, and for this purpose only," nor whether such system was pursued in this instance by the management for a whole or part of the time. From an examination of the Encyclopedia Britannica, put in evidence apparently without objection, the name was taken from the city of Rochdale, Lancaster, England, said to be the birthplace of the coöperative movement as a system for conducting business and now used as a general term appropriate to any kind of business, store, or other where the coöperative method is pursued." But there are no facts in evidence tending to show, nor is there anything in the term *ex vi termini* to import that the condition appearing in this note is in violation of the charter or other law or public policy of the State. Nor are the rights of creditors directly involved, the findings of the court being to the effect that none of them are parties, and the objective property of the company amounting to $1,703.67 and the debts only to $1,450, and under the law controlling in subscriptions of this character, the question presented is whether the stipulation or condition appearing on the face of defendant's note is void as being in fraud of the rights of the other subscribers or stockholders.

Recurring to the findings of fact more directly relevant to this question, it appears that there are sixty-eight subscribers who have paid in full, amounting to $1,700, and twenty-five, including the defendant, who have as yet paid nothing; that the company having duly organized, undertook to carry on its specified business for some months on the Rochdale plan, as the management understood it, but later it was so far changed as to meet competition by usual methods; that the business has been conducted at a substantial loss, and an entire sacrifice of the paid-up stock is threatened.

Under these circumstances, defendant, being called on to pay, resists recovery by reason of an alleged violation of a condition subsequent attached to his subscription. So far as the facts now disclose, such a provision was personal to him and, although appearing on the face of the

note, given in evidence of his obligations, was unknown to the other stockholders and unassented to by them, and, in our opinion, on the facts as presented in the findings of the court, to uphold defendant's position would be to wrongfully enhance the burden of those stockholders who had paid in full and in violation of that equality of obligation which should prevail amongst subscribers who embark in a common enterprise and on a principle of equal and proportionate responsibility.

As said by *Associate Justice Brown* in *Farrish v. Cotton Mills*, 157 N. C., 190: "It is elementary that a corporation, as a rule, must treat all shareholders of the same class alike." In *Meholin v. Carson*, 17 Idaho, 742, it is held, among other things, that a corporation has no authority to accept subscription to capital stock upon special terms when the terms are such as to constitute a fraud upon the other subscribers or upon persons who become creditors of the corporation. And in 2 Clark and Marshall on Private Corporations, p. 1452, sec. 467c, it is said: "A corporation has no authority to accept subscriptions upon special terms when the terms are such as to constitute a fraud upon the other subscribers or upon persons who may become creditors of the corporation in reliance upon a *bona fide* regular subscription of the authorized capital stock. In such a case, however, the subscription is not void. The fraudulent and unauthorized stipulations are void, and the subscriber is liable for his subscription as if no such stipulations had been inserted." And this same general principle is recognized and approved in many authoritative cases and text-books of established repute. *Upton, assignee, v. Tubelock*, 91 U. S., 45, and *Webster v. Upton,* same volume, p. 65; *Morrow v. Iron and Steel Co.*, 87 Tenn., 262; *Bank v. Moody* (Ark.), 161 S. W., 134; *Melvin v. Ins. Co.*, 80 Ill., 446; *Johnston v. R. R.*, 81 Ga., 725. Apart from this, where, as in this case, the stipulation relied upon, even where valid, is in the nature of a condition subsequent, it is considered as collateral to the principal obligation, and the remedy of the subscriber in case of breach is by an action to recover damages. 8 Thompson on Corporations, White's Supp., sec. 625, citing, among other cases, *The Gould, etc., Valve Co.*, 140 Iowa, 744; Purdey's Beach, sec. 237.

On reference to his Honor's findings, it does not appear that defendant has suffered any damages by the observance or failure to observe the condition, or that any such damages are alleged or claimed by him. It is insisted further for defendant that "at some time after the company was formed and doing business he had offered to pay his subscription, and the offer was refused, thereby releasing him from his position and obligation as subscriber." There is authority for the position that when a position of a defendant is in the tentative, constituting a mere offer to subscribe, a refusal by the corporation may have the effect of releasing him, 10 Cyc., p. 456; but where, as in this case, the subscrip-

tion has been made and the obligation of the party has become absolute, a mere refusal by the corporation does not release. As against creditors or other stockholders who have not been consulted or do not assent, the management could not, without consideration, surrender or cancel the obligation by direct action, and are clearly without authority to discharge a subscriber by a mere refusal to presently accept his tender of payment. *Boushall v. Myatt,* 167 N. C., 328; *Bank v. Moody, supra;* 8 Thompson, White's Supp., sec. 494; 1 Cook on Corporations, sec. 170.

. On this question, in *Bank v. Moody, McCollough, C. J.,* delivering the opinion, said: "It appears, however, that defendant Vaughn and several other stockholders never paid any part of their subscriptions to the capital stock, but gave notes therefor which were afterwards canceled by the directors. The corporation, acting through its directors, had no right to cancel the notes for the stock subscriptions as against creditors *nor* as against other stockholders who had paid their subscriptions. Those who had paid were, to the extent of their payments on stock, creditors of the corporation, and are entitled to have the liability against other stockholders enforced."

The present corporation was organized in 1914, presumably under the general law (the charter does not appear in the record), and before the enactment of the statutes more directly applicable to enterprises of this character. Laws of 1915, ch. 144, and ch. 115. As now advised, we are not aware that these later statutes would interfere with or affect the positions recognized and upheld in this opinion, but we deem it well to note that the provisions of these later statutes, not being applicable to the present case, have been in no wise considered.

For the reasons heretofore given, we are of opinion that there was no error in his Honor's judgment, and the same is

Affirmed.