## Staunton.

JAMES H. O'DELL v. APPALACHIAN HOTEL COR-
PORATION.

September 19, 1929.

The opinion states the case.

*E. M. Fulton*, for the plaintiff in error.

*Geo. L. Taylor* and *R. R. Parker*, for the defendant in error.

WEST, J., delivered the opinion of the court.

Appalachian Hotel Corporation, plaintiff, recovered a judgment against James H. O'Dell, defendant, in the sum of $1,000.00, on a stock subscription contract entered into between the parties.

The case is a proceeding by notice of motion for judgment.

The defendant filed a special plea in writing and charged fraud and deceit in the procurement of the contract. The plaintiff filed its demurrer to the plea, which the court sustained, and entered judgment for the plaintiff as above stated.

The notice charged that the subscription contract was contingent upon the forming of a hotel corporation; and the special plea alleged that R. C. Wolfenbarger, agent for the plaintiff corporation, approached the defendant to subscribe to the capital stock of plaintiff's company, to be used in the construction of such hotel.

The contract, which is a part of the notice, further provided that "no representation, statements or agreements other than as herein recited have been made or are to be binding on said corporation and my entire contract herein expressed."

The special plea alleges as follows: The defendant "was approached by R. C. Wolfenbarger, agent of plaintiff, to subscribe to the capital stock of plaintiff's company, to be used in the construction of such hotel, and at said time defendant and said Wolfenbarger agreed that defendant would subscribe for $1,000.00 of the said capital stock on condition that the defendant would have the option of building the said hotel at the lowest bid that should be received for its construction, if defendant wanted to do so, and upon the further condition that the said hotel building should be started by March 1, 1927, and the contract of subscription was to be executed in duplicate, each of the parties holding one of them.

"At the time defendant was quite busily engaged and the matter was hurriedly closed. The defendant endorsed the said conditions of said subscription as part of the contract on the duplicate he retained, and said Wolfenbarger was to endorse the same upon duplicate retained by him, and he was over behind a desk in defendant's office writing, as defendant thought, the said conditions upon his said duplicate, and then and there said Wolfenbarger represented to defendant that he had endorsed the said conditions upon his said duplicate, and defendant had no thought that the said Wolfenbarger had not done so; as agreed, and defendant was surprised to learn afterwards that it was claimed by the plaintiff that the said alleged subscription was unconditional.

"Respondent says that plaintiff did not comply with said conditions to said subscription, or either of them. On the contrary, it did not start the said hotel building until long after March 1, 1927, and never reported to defendant, or let him know in any way, the lowest bid that plaintiff had received for the construction of said

hotel, and never gave him any opportunity to contract, if he so desired, for such construction at such lowest bid."

The plaintiff demurs to the defendant's plea on these grounds: (1) The plea does not allege that R. C. Wolfenbarger was authorized by the plaintiff to make the contract which he claims to have been entered into with the defendant; (2) the subscription contract is a trilateral contract and the other subscribers cannot be bound by the agreement as set forth in the plea; (3) under the law, the contract is a collateral agreement and cannot be regarded as a conditional contract; (4) no statement or agreement not recited in the contract is binding on the defendant or other subscribers and cannot be invoked to defeat the payment of the subscription; (5) the written contract signed by the defendant and filed with the notice and as a part thereof, does not contain the agreement alleged in the notice, and therefore is not binding upon the parties; (6) the alleged agreement is illegal and unenforceable, since it would, if enforced, work a fraud upon *bona fide* bidders for the construction of the hotel building, and would be void as against public policy.

The only assignment of error is the action of the court in sustaining the demurrer to special plea No. 1 and entering the judgment complained of in favor of the plaintiff.

The first ground of demurrer: It is true that the principal can authorize his agent to solicit and receive subscriptions to the stock of a corporation. But if he sells the stock on special terms the contract is not binding upon the corporation unless it be subsequently ratified by the corporation. The sale of the stock in the instant case was upon special terms which were never ratified by the corporation.

■ In Fletcher on Corporations, section 608, the law is stated thus: "The validity and effect of subscriptions upon special terms turn sometimes upon the extent of the authority of the officer or agent by whom they are received. If the stockholders or the directors or other managing officers of a corporation appoint an agent to solicit or receive subscriptions to the stock of the corporation, the agent has no authority to make special terms with subscribers, and if he undertakes to do so, the special terms are not binding on the corporation unless they are subsequently ratified by the stockholders or managing officers. In the absence of a ratification the subscription may be enforced without regard to the special terms." *Yonkers Gazette Co.* v. *Taylor*, 30 N. Y. App. Div. 334, 51 N. Y. Supp. 969; *St. Nicholas Ins. Co.* v. *Howe* [20 N. Y. Super. Ct.] 7 Bosw. (N. Y.) 450; *Philadelphia & D. C. R. Co.* v. *Conway*, 177 Pa. St. 364, 35 Atl. 716; *Nippenose Mfg. Co.* v. *Stadon*, 68 Pa. St. 256; *Robinson* v. *Pittsburgh, etc., R. Co.* 32 Pa. St. 334, 72 Am. Dec. 792. See *Hardin* v. *Sweeney*, 14 Wash. 129, 44 Pac. 138.

■ The second ground of demurrer: It seems clear that the contract in the instant case is a trilateral contract.

Speaking of the nature and character of subscription contracts, Fletcher on Corporations, section 532, says: "And it has also been held that the subscription is a trilateral contract, being an undertaking not only between the corporation and the individual stockholder, but an undertaking between the corporation, the individual subscriber and all the other subscribers to the stock as well." Citing many cases.

The contract sued on provides that in consideration of the subscriptions of others of like effect "I hereby subscribe for and agree to purchase," etc.

■

In *Wilson* v. *Hundley*, 96 Va. 96, 30 S. E. 492, 495, 70 Am. St. Rep. 837, the court says: "A subscription to the capital stock of a joint stock company is not only an undertaking to the company, but with all other subscribers. It is of the essence of the contract between the shareholders that they shall all contribute ratably to the payment of the company's debts and liabilities. The amount which each pays, or agrees to pay, for his stock, is by his contract of membership, dedicated to that end."

The third ground of demurrer: The authorities seem to sustain the contention of the plaintiff that under the law the agreement set out in the defendant's plea should be regarded as a collateral agreement and cannot be regarded as a conditional subscription but as an absolute subscription.

In Fletcher on Corporations, section 574, this is said: "A provision in a subscription for stock in a hotel company that the hotel shall be located and built at a certain point is not a condition precedent. (*Red Wing Hotel Co.* v. *Friedrich*, 26 Minn. 112, 1 N. W. 827.) And the same is true of a stipulation in a subscription for organization stock in a corporation, that the corporation shall issue bonds to the subscriber to the full amount of his subscription, secured by a mortgage on its plant; of a provision in a subscription for preferred stock that the subscriber shall receive a certain amount of common stock as a bonus; of a provision that the subscription is to be used to do business on a particular system (*Warren County Co.-Op. Assn.* v. *Boyd*, 171 N. C. 184, 88 S. E. 153); of a provision that the subscriber shall be given a position in the company at a stated compensation, and that if the company fails to comply with such provision the subscription shall be void (*Stunt* v. *Newark Weldless*

*Tube & Steel Co.*, 22 Ohio Cir. Ct. R. 120); and of a provision in the charter of a corporation that as soon as sufficient shares shall be subscribed, and sufficient money paid in, the trustee shall erect buildings required by the act. (*Craig* v. *Cumberland Valley State Normal School*, 72 Pa. St. 46.) Nor does an agreement by the corporation to repurchase stock from a subscriber at his option make the subscription a conditional one. (*Sarbach* v. *Kansas Fiscal Agency Co.*, 86 Kan. 734, Ann. Cas. 1913C 415, 122 Pac. 113; *McIntyre* v. *E. Bement's Sons*, 146 Mich. 74, 10 Ann. Cas. 143, 109 N. W. 45. See Fletcher on Corporations, Vol. 2, pages 1267–1268.)"

In the same book (Fletcher on Corporations), page 1271, section 576, we find this: "Different rules apply, for obvious reasons, to subscriptions prior to and for the purpose of forming a corporation. According to the overwhelming weight of authority, when a special charter or general enabling act authorizing the formation of a corporation expressly or impliedly requires, as a condition precedent to the incorporation or exercise of corporate powers, that the entire authorized capital stock, or a certain percentage thereof, shall be subscribed for, it contemplates and impliedly requires that the subscriptions shall be absolute and unconditionally, the subscriptions cannot be made upon conditions precedent."

The fourth and fifth grounds of demurrer: The contract provides that no statement, representation or agreement, other than those recited in the agreement contract, shall be binding on the parties. It follows that the agreement, as claimed by the defendant, not being stated in the contract, the same is not binding upon the subscribers and cannot be invoked to prevent the payment of the defendant's subscription.

In *Western Manufacturing Co.* v. *Cotton & Long*,
126 Ky. 749, 104 S. W. 758, 759, 12 L. R. A. (N. S.)
427, relied on by defendant in his petition, the facts
were not in accord with the facts in the instant case.
In the *Cotton & Long Case*, the contract contained a
clause in these words: "This is all the contract be-
tween us," which defendants had not read. There is
no allegation in his plea that the defendant did not
know of the provision in paragraph 6 of the subscrip-
tion agreement.

The sixth ground of demurrer: The agreement
alleged by the defendant in his plea is illegal and void
and against public policy, and if executed would work
a fraud upon the subscribers to stock and cannot be
relied on to defeat payments on the subscription
agreement.

In 6 R. C. L., page 712, speaking of contracts
which are against public policy, the author says:
"What contracts are against public policy? However,
under the principles relating to the doctrine of public
policy, as applied to the law of contracts, courts of
justice will never recognize or uphold any transaction
which, in its object, operation or tendency, is calcu-
lated to be prejudicial to the public welfare. That
sound morality and civic honesty are corner stones of
the social edifice is a truism which needs no re-enforce-
ment by argument. It may, therefore, be taken for
granted that whenever the courts are called upon to
scrutinize a contract which is clearly repugnant to
sound morality and civic honesty, they need not look
long for a well fitting definition of public policy, or
hesitate in its practical application to the law of
contracts." Citing *Veasey* v. *Allen*, 173 N. Y. 359, 66
N. E. 103, 62 L. R. A. 362.

We are of the opinion that section 3788 of the

Virginia Code has no application to the instant case. The effect of the section is to require the subscriber who has agreed to subscribe for stock of the company and pay cash therefor, to comply with his contract, and he cannot be compelled to settle for such stock in land or other property, but only in cash as agreed in the subscription contract.

██ ██ Defendant's counsel alleges in his petition that the contract set out in the defendant's plea consitutes fraud and deceit in the procurement of the subscription contract. There is no merit in this contention. Under the law, the representations made by Wolfenbarger, as agent for the plaintiff, were not such as would constitute fraud in the procurement of the subscription contract. The representations had no reference to the past or existing facts.

Fletcher's Cyc. Corporations, section 619, states the law on fraudulent representations in these words: "A representation, to constitute fraud, must relate to a past or existing fact, and not be a mere collateral promise, or a statement of intention, or other statement as to future events. The latter are no ground for rescinding a subscription, although they may be made with intent to deceive, and may not be performed or realized." Citing *Sawyer* v. *Pickett*, 19 Wall. 146, 22 L. Ed. 105, and numerous other cases. "Thus a subscriber for stock in a railroad company cannot avoid his subscription because of false representations or statements as to how, when, or where the road will be built, although made, not as mere expressions of opinion, but as statements of fact." Citing *Jefferson* v. *Hewitt*, 95 Cal. 535, 30 Pac. 772, and a number of other cases. "Similarly, fraud cannot be predicated upon representations as to the objects and purposes for which a proposed corporation is to be formed" (citing *Shick*

v. *Citizen's Enterprise Co.*, 15 Ind. App. 329, 57 Am. St. Rep. 230, 44 N. E. 48), "or statements that it will establish branch offices in certain cities (*Guarantee & Collection Co.* v. *Mayer*, 141 Pa. St. 511, 21 Atl. 665), "or upon promises that it will give the subscriber employment. As, for example, a statement that the company intended to build a manufacturing plant, and a promise that it would do so and would give the defendant the contract for the mason work." (*Milwaukee Brick & Cement Co.* v. *Schoknecht*, 108 Wis. 457, 84 N. W. 838.)

For the reasons stated, the judgment will be affirmed.

*Affirmed.*