480 P.2d 116 (1970)
Harry SOBOL, Trustee, Plaintiff in Error,
v.
Frederick AVILA, John Stewart Brooks, David Joseph Lorenz, Martin Paul MacNaughton, John A. Montague and Robert Swaffield, Defendants in Error.
No. 70-502. (Supreme Court No. 23798.)
Colorado Court of Appeals, Div. II.
December 29, 1970.
*118 Harry Sobol, Trustee, pro se.
James A. Sweeney, Lakewood, for John A. Montague.
A. H. Hitchcock and Michael M. Laden, Denver, for John Stewart Brooks, David Joseph Lorenz and Martin Paul MacNaughton.
Not Selected for Official Publication.
COYTE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
In November 1965, the Monoflex Corporation was adjudicated bankrupt in Federal District Court. Harry Sobol, appearing pro se as Trustee in Bankruptcy for the corporation, was plaintiff below and is plaintiff in error on appeal.
Plaintiff filed this action against the six defendants for performance of their obligation under a stock subscription agreement entered into on June 11, 1964, and hereafter referred to as the "Subscription Agreement." By the terms of this agreement, the six defendants agreed to subscribe to shares, par value one dollar per share, in the Monoflex Corporation as follows:

 Martin Paul MacNaughton $ 5,000
 John Stewart Brooks 5,000
 David Joseph Lorenz 3,000
 John A. Montague 3,000
 Frederick Avila 2,000
 Robert Swaffield 2,000

Plaintiff alleged that none of the defendants had paid for his subscribed shares and sought judgment against each of the six defendants for the amount agreed to in the Subscription Agreement.
In answer to this complaint, the defendants MacNaughton, Brooks and Lorenz alleged the Subscription Agreement had been voided as to them by the mutual agreement of the parties and, as a further defense to their obligation under this Subscription Agreement, alleged that in a stock purchase agreement entered into on October 26, 1964, the remaining three defendants, Montague, Avila and Swaffield, had assumed their obligations under the Subscription Agreement and that they had been released from said agreement.
According to the terms of the October 26, 1964, agreement, which shall hereafter be referred to as the "Assumption Agreement," it was provided that:
"* * * Montague, Swaffield and Avila each agree, severally and not jointly, to assume one-third of the combined obligations of Brooks, MacNaughton and Lorenz under that certain Subscription Agreement executed by the parties hereto and dated June 11, 1964, a copy of which is attached hereto as Exhibit A. It is the intent of the parties that the aforesaid several and one-third (1/3) assumptions of the combined obligations of Brooks, MacNaughton and Lorenz under said Subscription Agreement by Montague, Swaffield and Avila shall fully relieve Brooks, MacNaughton and Lorenz of said obligations, and that Montague, Swaffield and Avila, in the proportions hereinbefore indicated, shall be soley responsible therefor."
*119 The defendant Montague answered separately, acknowledging his execution of the Subscription Agreement, but asserting as a defense a set-off against the plaintiff as trustee in the amount of $9,764.34, as evidenced by a promissory note executed by Monoflex Corporation, payable to defendant Montague. According to a corporate resolution, stipulated to by plaintiff, this note was delivered to defendant Montague in consideration of his transferring 400 shares of common stock in an outside corporation to Monoflex Corporation.
Defendant Avila also answered separately, alleging as a defense full payment of his obligation. According to the uncontradicted evidence, semi-monthly payroll deductions of $105.20 were made over a year's period of time, and in addition a flat sum of $1,000 had been paid to the corporation by the defendant Avila. He claimed that these deductions and payments were made to the corporation in order to satisfy his obligations on the Subscription Agreement.
The defendant Swaffield made no answer, and a default judgment was entered against him.
Trial on the issue of the obligations and liability of the remaining five defendants was had to the court. At the conclusion of all the evidence, the court dismissed as to all six defendants, including Swaffield, on the grounds that the Subscription Agreement had been voided by the subsequent Assumption Agreement and that any liability which might lie against these defendants must come from the Assumption Agreement, and that, since plaintiff had sued on the Subscription Agreement, not the Assumption Agreement, the action against all defendants should be dismissed.
Plaintiff appeals urging error: (1) in the refusal of the trial court to grant its motion for summary judgment; (2) in dismissing plaintiff's claim; and (3) in permitting the Assumption Agreement to be raised as a defense to the original Subscription Agreement.
Because of the interrelated nature of the defenses raised and plaintiff's asserted errors, it will be necessary to discuss each defense raised in a separate subsection in conjunction with plaintiff's assignments of error.

I.
The first defense raised was that of defendants MacNaughton, Brooks and Lorenz, who disclaimed their liability on the Subscription Agreement by reason of the assumption of said liability by defendants Montague, Swaffield and Avila.
For convenience, we shall refer to defendants MacNaughton, Brooks and Lorenz in this subsection as the assignors and defendants Montague, Swaffield and Avila as the assignees.
The Subscription Agreement entered into as of June 1964 is best described as a tri-party contract, the corporation being one party, the assignors the second party, and the assignees the third party. O'Dell v. Appalachian Hotel Corp., 153 Va. 283, 149 S.E. 487, 68 A.L.R. 629.
As a tri-party contract it is essential that any negotiated cancellation of liability or release of the individual subscriber's obligation under the Subscription Agreement be agreed to by all other parties concerned. In the present case this would mean that not only must the assignees agree to release the assignors from liability (as was done through the Assumption Agreement), but also assent to release of the assignors from all liability was required from Monoflex Corporation. 4 W. Fletcher, Private Corporations § 1604 (1965 Rev.)
Plaintiff maintains that the corporation did not consent to any release, and that consequently the three assignors were not released from liability. In support of his position plaintiff refers to the corporate minutes stipulated to by the parties, in which although the fact is recognized that this Assumption Agreement had been entered into, no formal resolution appears specifically releasing the assignors.
Corporate assent to any transaction to which it is a necessary party need not be by formal resolution, but may be implied or inferred from the particular facts and surrounding *120 circumstances. Butts v. King, 101 Conn. 291, 125 A. 654.
The facts in this case clearly indicate corporate approval of the Assumption Agreement and the existence of corporate intent to release the assignors from their liability under the original Subscription Agreement. This was a small closed corporation, having but six directors as of October 26, 1964 (the date of the Assumption Agreement), the six directors being the six defendants involved.
On the date of the Assumption Agreement, three of these directors in their individual capacities as subscribers to the corporate stock agreed to assign their rights and liabilities under this agreement to the remaining three directors in their individual capacities as assignees to this agreement who, in turn, agreed to assume the liabilities of the assignors. The apparent underlying cause of this Assumption Agreement was a split of opinion among the stockholders and directors as to the best means of operating the corporation.
Whatever the cause, however, the salient fact remains that the assignors and the assignees were the sole stockholders of the corporation and comprised the board of directors for Monoflex Corporation. The three assignors contemporaneously with the execution of the Assumption Agreement resigned their positions as directors, and their positions remained unfilled, leaving the three assignees in complete control of Monoflex Corporation.
From these facts it is apparent that there was at least implied corporate approval of this October 26, 1964, Assumption Agreement and it is a reasonable inference that the three assignees signified their assent to this Assumption Agreement both as individuals and as corporate directors, thereby releasing assignors from any further liability under the Assumption Agreement.
Plaintiff also argues that the Assumption Agreement is invalid because of the fact that a corporation may not release a subscriber from liability under a subscription agreement, if such release would work to the detriment of a corporate creditor. He cites 18 Am.Jur.2d, Corporations § 325, as his authority:
"It is generally held that any cancellation or release of a stockholder's liability on unpaid subscriptions which is detrimental to existing creditors is void and ineffectual as against such creditors."
The next sentence to this section reveals why this argument must fail:
"However, it is held that a receiver of a corporation cannot enforce a stocksubscription agreement to the cancellation of which the corporation consented at the time when it was solvent."
The evidence is clear that it was not until October 9, 1965, or nearly a year after this agreement, that the involuntary petition in bankruptcy was filed. Difficulties were encountered at the time of the Assumption Agreement; however, they were not equated with "insolvency," particularly since there is direct testimony present that the corporation was not insolvent at that time.
We concur with the finding below that the defendants Brooks, Lorenz and MacNaughton, as assignors under the Assumption Agreement, were released from liability under the original Subscription Agreement.

II.
Defendant Montague admitted execution of the Subscription Agreement, but claimed a set-off for money owed to him by Monoflex Corporation.
Specifically, the corporation executed a promissory note for $9,764.34 and in return Montague conveyed to Monoflex Corporation the common stock he owned in another corporation. The trial court permitted this to be raised as a set-off to plaintiff's claim, and since the amount of the note was in excess of the amount owed by Montague to Monoflex, the trial court dismissed the claim against Montague. Plaintiff does not question on appeal either the execution of the note or the fact that it was unpaid. Plaintiff merely asserts that the trial court erred in light of C.R.S. *121 1963, 31-4-5(2), which provides that promissory notes may not constitute payment for the shares issued by a corporation. As pointed out in Haselbush v. Alsco, 161 Colo. 138, 421 P.2d 113, the purpose of this statute is to prevent a corporation from issuing stock without receiving full value in return, thereby deceiving potential creditors as to the actual value of the corporation.
Monoflex Corporation did not issue shares of stock in return for which defendant Montague gave his promissory note. The facts show that it was Monoflex Corporation which issued the promissory note in consideration for which defendant Montague delivered shares in another corporation to Monoflex. Obviously, therefore, C.R.S.1963, 31-4-5(2) is not applicable here since no shares of Monoflex were involved.
The only question then is whether or not the defendant Montague may offset his claim on the note against Monoflex's claim on the Subscription and Assumption Agreements. We answer this in the affirmative, noting that a debtor of a bankrupt corporation may assert as set-off, the full value of any provable claim he may have against said corporation. In re Potts, 6 Cir., 142 F.2d 883.
We therefore conclude the trial court was correct in dismissing as to the defendant Montague.

III.
The trial court dismissed as to Avila because plaintiff had based his claim on the Subscription Agreement, which the trial court found to have been superseded by the Assumption Agreement. The trial court concluded that in order to hold him liable it would be necessary for the plaintiff to initiate another action on the Assumption Agreement. We disagree. The Assumption Agreement did not act to discharge Avila from the Subscription Agreement.
Defendant Avila has raised an issue which, if true, would be a valid defense against his liability under the Subscription Agreement. By his answer Avila alleged full payment by means of a $1,000 down payment and semi-monthly deductions of $105.20 occurring over a year's period of time intended as satisfaction of his obligation.
Although there is no question but that such a sum was indeed paid into the corporation, there is conflict as to whether or not such a sum was intended to pay Avila's share of the agreement, or for other purposes. If paid for the purpose of satisfying his obligation, it would be a valid defense against plaintiff's claim. C.R.S.1963, 31-4-3. However, the trial court made no finding as to why the sum was paid since it concluded that dismissal was proper on other grounds.
We must remand to the trial court for a new trial on this issue with the admonition that, if the deductions were in fact intended to be payment for his obligations under this Subscription Agreement and under the Assumption Agreement, it would operate as a defense to the extent of the payments made as to plaintiff's claim.

IV.
Finally, as to the defendant Swaffield, we find the trial court erred in dismissing the claim against him. Since the pleadings were sufficient to establish liability on his part, by his failure to answer, the plaintiff is entitled to a default judgment against Swaffield as prayed for in the complaint.
Judgment affirmed as to defendants MacNaughton, Brooks, Lorenz and Montague; reversed as to defendant Swaffield; and reversed and remanded with directions as to defendant Avila.
SILVERSTEIN, C. J., and ENOCH, J., concur.