Mark D. ROGET and Lori L. Roget,
Plaintiffs–Appellees and Cross–
Appellants,

v.

GRAND PONTIAC, INC., Defendant–
Appellant and Cross–Appellee.

No. 97CA2224.

Colorado Court of Appeals,
Div. V.

Oct. 28, 1999.

As Modified on Denial of Rehearing
Jan. 6, 2000.

Certiorari Denied Aug. 7, 2000.

**344**

Douglas Pooley, Denver, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Ruh & Associates, LLC, Richard P. Ruh, Aurora, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge TAUBMAN.

In this action arising from an auto lease dispute, defendant, Grand Pontiac, Inc., appeals the judgment entered upon a jury verdict against it and in favor of plaintiffs, Mark D. and Lori L. Roget. Plaintiffs challenge on cross-appeal the trial court's determinations regarding attorney fees and costs. We affirm in part, reverse in part, and remand for further findings.

In January 1990, the Rogets entered into an auto lease with Grand Pontiac. Shortly thereafter, Grand Pontiac assigned the lease to General Electric Capital Auto Lease (GE-CAL). In January 1991, GECAL filed a complaint against the Rogets alleging that they were in default for failure to make monthly lease payments. The Rogets filed a counterclaim and a third-party complaint against Grand Pontiac, alleging several contract and tort claims, and also claims based on alleged statutory violations. Prior to trial, the Rogets and GECAL settled their claims, which were dismissed with prejudice.

Following a trial in April 1992, the Rogets were awarded damages against Grand Pontiac on some of their claims. When the jury returned the verdict forms, however, confusion ensued regarding the correct calculation of damages. After several unsuccessful attempts to resolve the matter in the trial court, a division of this court reversed the judgment in *Roget v. Grand Pontiac, Inc.* (Colo.App. No. 94CA0706, Nov. 24, 1995) (not selected for official publication), and the matter proceeded to trial a second time.

On retrial, the jury returned a verdict in favor of the Rogets on their claims for violations of the state consumer protection act and motor vehicle licensing laws, and on their claim of outrageous conduct. Grand Pontiac appeals this judgment.

The trial court awarded attorney fees and costs to the Rogets, but declined to award either prejudgment interest on such fees or computerized legal research expenses as costs. The Rogets, on cross-appeal, challenge these determinations concerning their award.

## I. Assignment of the Lease

Grand Pontiac first contends that the trial court erred by denying its motion for a directed verdict on all claims based on its assertion that the Rogets' settlement with GECAL released Grand Pontiac from all liability. We are not persuaded.

Here, Grand Pontiac asserts that, because the relevant statutes govern its conduct as well as that of GECAL, it should have been considered jointly and severally liable with GECAL for the Rogets' claims. Based on this supposed joint and several liability, Grand Pontiac contends that it was a "co-obligor" with GECAL and that a release of one co-obligor releases all. Thus, Grand Pontiac concludes, the Rogets' release of GE-CAL pursuant to its settlement extinguished the liability of Grand Pontiac as well.

■ The trial court found, however, that Grand Pontiac and GECAL were not co-obligors and rejected Grand Pontiac's argument. We agree with the trial court.

After the assignment, GECAL became the obligee under the lease agreement while the Rogets remained obligors. Because GECAL was an obligee, Grand Pontiac could not be a co-obligor with GECAL.

■ Grand Pontiac further asserts that, after the assignment, the relationship between Grand Pontiac and GECAL became

one of principal and surety with Grand Pontiac as the surety for GECAL. Grand Pontiac argues that, based on this relationship, a release of GECAL as principal resulted in a release of itself as the surety.

■ Even if we assume that Grand Pontiac was a surety for GECAL, the Rogets' release of GECAL three days before trial did not release Grand Pontiac from liability. Where a principal/surety relationship arises, the release of the principal releases the surety from liability, unless a party expressly reserves its right to proceed against the surety or receives the surety's consent to remain liable. *Matthews v. Saleen*, 812 P.2d 1186 (Colo.App.1991).

Here, Grand Pontiac was a party to the Rogets' settlement with GECAL. Further, in his opening statement at trial, Grand Pontiac's attorney acknowledged such settlement without contending that Grand Pontiac had been released from liability as a result of the stipulation to dismiss GECAL. Under these circumstances, we conclude that, by its conduct, Grand Pontiac consented to remain liable.

■ Furthermore, the trial court found that, where a lessor assigns a lease to another party, a lessee's release of the assignee does not necessarily result in a waiver of its claims of wrongdoing against the assignor. Again, we agree with the trial court.

■ An assignment does not relieve the assignor from liability under the contract. Rather, after the assignment, the assignee becomes primarily liable for the obligations under the contract, while the assignor remains secondarily liable. The debtor may then sue the assignor, the assignee, or both. *See Herigstad v. Hardrock Oil Co.*, 101 Mont. 22, 52 P.2d 171 (1935); *Southern Surety Co. v. W.E. Callahan Construction Co.*, 283 S.W. 1098 (Tex.Civ.App.1926); *see also Sobol v. Avila*, 480 P.2d 116 (Colo.App.1970) (not selected for official publication).

Thus, we conclude that the Rogets' settlement with GECAL did not release Grand Pontiac from all liability because it was still secondarily liable under the lease agreement.

## II. Outrageous Conduct

### A. Directed Verdict

Grand Pontiac also asserts that the trial court erred by denying its motion for directed verdict on the claim of outrageous conduct. It argues that insufficient evidence existed for submission of the claim to the jury. We disagree.

■ When reviewing a trial court's denial of a motion for a directed verdict, we must ask whether a reasonable jury, after drawing all possible inferences from the evidence presented, could reach the same verdict delivered at the trial. *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

■ We must also view the evidence which led to the jury verdict in the light most favorable to the prevailing party. *Roberts v. Holland & Hart*, 857 P.2d 492 (Colo.App. 1993).

■ Outrageous conduct occurs when an actor intentionally and recklessly causes severe emotional distress. *Hansen v. Hansen*, 43 Colo.App. 525, 608 P.2d 364 (1980). Such conduct must be so outrageous and extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970).

■ Conduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he or she has actual or apparent authority over the other, or the power to affect the other's interest. *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292 (Colo.App.1982); Restatement (Second) of Torts § 46 comment e (1965).

■ Although the question of whether conduct is sufficiently outrageous is ordinarily one for the jury, the court must determine, in the first instance, whether reasonable people may differ as to whether the conduct of a defendant is sufficiently extreme to result in liability. *Card v. Blakeslee*, 937 P.2d 846 (Colo.App.1996).

■ As to such issue, the trial court's conclusion of law is not binding on this court.

*Zalnis v. Thoroughbred Datsun Car Co., supra.*

■ Here, the trial court found that the alleged course of conduct of the employees of Grand Pontiac included strong-arming during negotiations, committing fraudulent acts, and falsifying documents related to the lease transaction. The court found that the cumulative effect of these actions could constitute outrageous conduct.

In our view, reasonable persons could differ as to whether the conduct of Grand Pontiac was sufficiently extreme to result in liability. Evidence that Grand Pontiac refused to give Mark Roget the keys to his car when he requested them and the above-noted conduct by Grand Pontiac employees could be considered extreme and outrageous under these facts. *See Zalnis v. Thoroughbred Datsun Car Co., supra.* The question, therefore, was properly one for the jury to resolve.

### B. Punitive Damages

■ Grand Pontiac also contends that the trial court erred by submitting the claim for punitive damages to the jury because the evidence of corporate involvement was insufficient as a matter of law. We disagree.

■ Punitive damages may be awarded against a corporation for the actions of its agent if the agent was employed in a managerial capacity and was acting within the scope of his or her employment. If the agent was acting in a managerial capacity, the corporation need not actually authorize or ratify the act to warrant an award of punitive damages. *Jacobs v. Commonwealth Highland Theatres, Inc.,* 738 P.2d 6 (Colo.App.1986).

Here, the trial court found that the evidence was sufficient to allow the jury to conclude that the actions of the employees of Grand Pontiac who dealt with the Rogets were authorized and ratified by the corporation itself.

At trial, the Rogets presented evidence that Grand Pontiac's owner was present at the dealership during the initial meeting and that he had interacted with Mark Roget's brother-in-law who had accompanied Roget to the dealership. In addition, the Rogets presented evidence that several managers discussed the Rogets' lease and participated in facilitating the transaction at various stages of lease negotiations. We conclude that, even if there was insufficient evidence of explicit ratification of the outrageous conduct at issue, sufficient evidence of managerial participation existed to warrant allowing the jury to decide whether an award of punitive damages was proper. *See Jacobs v. Commonwealth Highland Theatres, Inc., supra.*

### III. Closing Argument

■ Grand Pontiac also urges that the trial court committed reversible error by allowing the Rogets' counsel to state during closing argument that Grand Pontiac's use of the wrong disclosure form resulted in an illegal contract. We conclude that any error by the trial court in this regard was harmless.

■ An objectionable characterization of the evidence during closing arguments does not necessarily constitute reversible error where the jury is given a curative instruction. *See Smith v. JBJ Ltd.,* 694 P.2d 352 (Colo. App.1984).

Here, during the Rogets' closing argument, Grand Pontiac objected to counsel's characterization of the lease as invalid and illegal based on Grand Pontiac's failure to use the correct disclosure form as required by law. The trial court found that the use of the incorrect form was illegal, but that this fact did not necessarily render the lease contract invalid. The court then gave the jury a curative instruction stating that the failure to use the correct form did not render the contract invalid, only illegal. Counsel for the plaintiff later referred to the lease as illegal, based on the assertion that the lease agreement consisted of several documents including the illegal form.

Although Grand Pontiac asserts that it was prejudiced by the trial court's overruling its objection to the closing argument, we conclude that any error by the trial court in this regard was harmless. The challenged remark in the Rogets' closing argument was not material to any of the Rogets' claims on which they prevailed.

We recognize that the Rogets were required to prove that Grand Pontiac "committed an illegal act under the Motor Vehicle Dealer Act" to prevail on its claim under this statute. However, this did not require the jury to find that there was an illegal contract, as such. Evidence of an "illegal act" under the statute existed since Grand Pontiac used the incorrect disclosure form in violation of statutory requirements. Thus, Grand Pontiac's rights were not substantially affected by the characterization of the contract as illegal. *See Hancock v. State,* 758 P.2d 1372 (Colo. 1988).

## IV. Evidence Supporting Attorney Fees

Finally, Grand Pontiac asserts that the trial court erred in awarding attorney fees because the evidence presented by the Rogets' counsel failed to demonstrate the prevailing rates in the community for services similar to those which he performed. We conclude that the award of attorney fees was supported by sufficient evidence.

It is improper for a trial court to take judicial notice of fees charged in the community when assessing the reasonableness of an award. *L.D.G. v. E.R.,* 723 P.2d 746 (Colo.App.1986).

However, the unrebutted testimony of an attorney may be sufficient to support a finding of reasonableness of fees awarded. *P & M Vending Co. v. Half Shell of Boston, Inc.,* 41 Colo.App. 78, 579 P.2d 93 (1978); *see Husband v. Colorado Mountain Cellars, Inc.,* 867 P.2d 57 (Colo.App.1993) (testimony of plaintiff, who was attorney, was sufficient to support finding of reasonableness of fees).

The determination of the reasonableness of attorney fees is within the sound discretion of the trial court and will not be reversed unless it is patently erroneous and unsupported by the evidence. *Newport Pacific Capital Co. v. Waste,* 878 P.2d 136 (Colo. App.1994).

Here, Rogets' counsel submitted an affidavit and testified before the trial court regarding the reasonableness of the requested fee award. Based on that record, the trial court found that the rates charged by the Rogets' counsel, $125 to $150 an hour, were consistent with rates charged in commercial litigation of this type and that it was on the low side of the fee scale in the community. The trial court noted that the Rogets offered no evidence of prevailing rates in the community other than the testimony of their attorney. However, the court determined that the evidence was sufficient to establish the reasonableness of the hourly rate.

Even if the trial court relied to some extent on its general knowledge of prevailing attorney fees, we conclude that this reliance was harmless because the unrebutted testimony of the Rogets' counsel was sufficient to support the court's determination. Thus, we find no abuse of discretion on the part of the trial court.

## V. Prejudgment Interest

On cross-appeal, the Rogets contend that the trial court erred by failing to award prejudgment interest on their attorney fee award. We are not persuaded.

The Rogets concede that their request is novel. However, relying on § 5–12–102(1)(a), C.R.S.1999, they argue that it is appropriate to award pre-judgment interest on attorney fees under a "wrongful withholding" theory to counteract the loss of the time value of the money at issue. In other words, the Rogets argue that because the litigation in this case spanned the course of several years, they should receive prejudgment interest on their award of attorney fees to compensate them for their loss of use of such money.

We do not agree that this argument is cognizable under a theory of wrongful withholding. The Rogets were not legally entitled to an award of attorney fees against Grand Pontiac until they prevailed at trial. Thus, Grand Pontiac did not withhold attorney fees from the Rogets' counsel, much less wrongfully withhold such fees.

Consequently, we conclude that the trial court did not err in declining to award prejudgment interest on the fee award.

## VI. Computerized Legal Research Expenses as Costs

Finally, the Rogets argue that the trial court erred in declining to award computerized legal research expenses as an item of costs. We agree that further proceedings are required.

After the Rogets requested an award of costs for computerized legal research, the trial court found that such expenses were not specifically authorized by statute or rule as a recoupable cost. The court also determined that such expenses do not fall within the scope of more general items identified within § 13–16–122, C.R.S.1999. It concluded that computerized legal research "costs are actually a form of attorney fees as they are nothing more than a reference source for legal research."

We do not address the issue of whether the computerized legal research costs may be recoverable as attorney fees because we conclude that they may be awarded as costs.

■ Costs fall into two categories: 1) "those incidental to litigation ...; and 2) those arising from the structural costs of maintaining a judicial system...." *Sears v. Romer*, 928 P.2d 745, 752 (Colo.App.1996). *See* § 13–16–122.

■ Section 13–16–122 governs the award of costs. The list of items includable as costs in that statute is illustrative rather than exclusive. *Cherry Creek School District No. 5 v. Voelker*, 859 P.2d 805 (Colo.1993).

■ Items that courts have held may be awarded as costs include: docket fees, jury fees, photocopy costs, deposition costs, mileage, parking, delivery, and long distance telephone charges. *See* § 13–16–122, C.R.S. 1999; *Cherry Creek School District No. 5 v. Voelker, supra; Harvey v. Farmers Insurance Exchange*, 983 P.2d 34 (Colo.App.1998) (*cert. granted on unrelated issues*, September 13, 1999).

There is no Colorado appellate decision that squarely addresses the issue of whether computerized legal research expenses may be recoverable as costs. *Cf. Newport Pacific Capital Co. v. Waste*, 878 P.2d 136 (Colo.App. 1994) (recognizing that numerous courts have

allowed recovery of computerized legal research expenses as part of an award of attorney fees); *Heating & Plumbing Engineers, Inc. v. H.J. Wilson Co.*, 698 P.2d 1364 (Colo. App.1984) (mentioning computerized legal research fees as an item potentially recoverable as part of an award of attorney fees).

■ Based on the broad definition of costs in *Cherry Creek School District No. 5 v. Voelker, supra*, we conclude that computerized legal research expenses may be recoverable as costs. Such expenses are those charged by third parties; we do not address here reimbursement for the time spent by lawyers or their assistants in conducting computerized legal research.

■ Absent a specific prohibition in the statute, a trial court has the discretion to award any reasonable costs requested. *See American Water Development, Inc. v. City of Alamosa*, 874 P.2d 352 (Colo.1994). When the costs requested are incurred for trial preparation purposes and are not commingled with the general costs of conducting business or the costs of other litigation, they are not overhead and may, in the court's discretion, be recovered as costs. *Harvey v. Farmers Insurance Exchange, supra* (affirming trial court's award of various costs including photocopies, deposition costs, mileage, parking, delivery, and long distance phone charges).

■ Similarly, when computerized legal research expenses are not commingled with other costs of conducting business or costs of litigation, they may be recovered as costs. *See O'Donnell v. Georgia Osteopathic Hospital Inc.*, 99 F.R.D. 578 (D.Ga.1983) (determining that, because computer assisted research is separately billable to the client, it is recoverable as a cost); *Aloha Tower Associates Piers v. Millennium Aloha*, 938 F.Supp. 646 (D. Hawaii 1996) (if computerized legal research expenses are separately billed to the client, such research costs are not part of the firm's overhead because they are part of the costs associated with representing a particular client, and can be allocated to that client); *cf. Haroco v. American National Bank & Trust*, 38 F.3d 1429 (7th Cir.1994) (computer assisted legal research is not an

expense taxable as costs, but is recoverable as part of an attorney fee award because computerized legal research costs are not included under the definition of costs contained in 28 U.S.C. § 1920); *but see Ortega v. City of Kansas City,* 659 F.Supp. 1201 (D.Kan.1987) (computer assisted research costs are not recoverable because they are included in a firm's overhead).

Accordingly, we conclude that § 13–16–122 does not prohibit an award of costs that includes the expenses associated with computerized legal research. Thus, courts may exercise their broad discretion and award such expenses.

█ However, the recovery of computerized legal research as costs is conditioned upon meeting three requirements. First, a party seeking to recover such costs must show that the client was billed for computerized legal research expenses separate from attorney fees. *See Case v. Unified School District No. 233,* 157 F.3d 1243 (10th Cir. 1998) (awarding computer research expenses where such charges are expenses normally itemized and billed in addition to the hourly rate).

Second, as with any cost award, the computerized legal research must have been necessary for trial preparation. *See Cherry Creek School District No. 5 v. Voelker, supra.*

Finally, the costs requested for computerized legal research must be reasonable. *See Cedar Lane Investments v. St. Paul Fire & Marine Insurance Co.,* 883 P.2d 600 (Colo. App.1994).

Thus, the cause here must be remanded for the trial court's determination of whether, in the court's discretion, the Rogets are entitled to recover computerized legal research expenses as an item of costs. If such computerized legal research expenses were billed to the Rogets as an item separate from attorney fees, they may be reimbursable to the extent they are reasonable and were necessary for trial preparation. If the Rogets were not billed separately for such expenses, they are not reimbursable.

The judgment is affirmed in all respects, except as to the denial of an award of costs for computerized legal research expenses. As to that issue, the judgment is reversed and the cause is remanded for determination whether such expenses meet the three requirements necessary to be recovered as costs.

Judge DAVIDSON and Judge KAPELKE concur.