# Wytheville

J. SOBLE V. NETTIE L. HERMAN, ETC.

June 10, 1940.

Record No. 2237.

Present, All the Justices.

The opinion states the case.

Herman A. Sacks and James G. Martin & Son, for the appellant.

Thomas L. Woodward and M. Anderson Maxey, for the appellee.

HUDGINS, J., delivered the opinion of the court.

The original bill filed in this cause alleged: (1) That Benjamin Herman, a citizen of Maryland, died in 1931 testate, and his widow, Nettie L. Herman, who was named

the sole beneficiary, qualified as his executrix; (2) that, at the time of his death, he was indebted to complainant, J. Soble, in the sum of $2,500, evidenced by a note due 90 days from July 14, 1931; (3) that Soble had been paid the sum of $1,000 on his note out of the personal estate, but that there was not sufficient personal property out of which this debt could be paid in full; and (4) that Herman's estate owned certain real estate situated in the city of Suffolk, Virginia, on which other parties held prior liens, evidenced by a deed of trust and a lease. The prayer of the bill was that the real property be sold to discharge the debt owing to complainant.

To the bill Nettie L. Herman, as executrix and in her own right, filed a demurrer and a plea of the statute of limitations. The trial court sustained the demurrer and the plea, and dismissed the bill; whereupon complainant, with leave of court, amended his bill against Nettie L. Herman in her own right. Again respondent demurred and pled the statute of limitations.

The material additional averment in the amended bill is that complainant did not bring his suit or action on the note within the 5-year period, because he relied upon the statement made to him by Nettie L. Herman that "she would never see him lose anything and would never plead the statute of limitations against said note, and that she would pay it." The trial court sustained the second demurrer but did not pass upon the second plea of the statute of limitations, and dismissed the case. From the two decrees the complainant sought and obtained this appeal.

■ There were seven distinct and separate grounds of demurrer, but the argument was confined to whether or not the statute of limitations applied. It is stated in the petition and the reply brief for appellant that the court erred in sustaining the demurrers and in not giving appellant an opportunity to demur to the second plea or to move to strike. Under these circumstances, this court will confine its consideration to the question argued, and will not consider those which might have been but were not.

■ Thus considering the case, the only question presented is whether an oral promise not to plead the statute of limitations, made by the executrix and sole beneficiary of an estate, is sufficient to remove the bar of the statute in a suit filed by the creditor to subject real estate of which decedent died seized and possessed to the payment of a debt due by decedent.

Code, sec. 5813, provides that no acknowledgment or promise by any personal representative of a decedent shall operate to take the case from under the influence of the statute of limitations. Code, sec. 5406, requires all personal representatives to plead the statute for the benefit of the estate wherever it is applicable.

■ This leaves for consideration the liability on the oral promise of the sole beneficiary of Benjamin Herman's estate. This promise is double-barreled. The first and last parts are that "she (Nettie L. Herman) would never see him (the creditor) lose anything * * * , and that she would pay it." The debt involved is an obligation of Benjamin Herman, not Nettie L. Herman; hence, the promise of Nettie L. Herman is a promsie "to answer for the debt * * * of another." No action can be maintained on such a promise unless it is in writing "and signed by the party to be charged thereby." Code, sec. 5561.

Appellant contends that that part of the oral promise, not to plead the statute of limitations, is enforceable under the provisions of Code, sec. 5821, reading: "Whenever the failure to enforce a promise, written or unwritten, not to plead the statute of limitations would operate a fraud on the promisee, the promisor shall be estopped to plead the statute. In all other cases an unwritten promise not to plead the statute shall be void, and a written promise not to plead it shall have the effect of a promise to pay the debt or discharge the liability."

■ Complainant had no cause of action against Nettie L. Herman prior to the date of her oral promise to him. The obligation in question was one made by her husband, Benjamin Herman. The fact that Nettie L. Herman is the

sole beneficiary of Benjamin Herman's estate does not change the relation of the debtor and the creditor, nor does it make Nettie L. Herman a debtor to the creditor of decedent.

 The creditor had a right, by appropriate action instituted before the bar of the statute fell, to charge any part or all of decedent's estate with the payment of his debt. If the total asests of the estate, properly administered, were not sufficient to discharge all the obligations, then the creditors, with certain exceptions, were entitled to share pro rata in the net proceeds of the estate, to the exclusion of the distributees, heirs, legatees or devisees. The creditor of an estate has no right to charge the heir or devisee with the payment of a debt due by the ancestor. There is no privity of contract between the parties.

While the object of this suit is to charge real estate of the testator with the payment of the testator's debt, it would be anomalous to require one of the necessary parties, in her representative capacity, to plead the statute, and to hold, in the absence of fraud, that the same party in her own right was estopped from so doing.

 It is apparent that the word "promise," used in the first line of the statute, means the obligation of the person liable, or, in this case, Benjamin Herman. The word "promisor" refers to the person making the promise, or to some other person who has become legally bound to discharge the obligation. The "promisor" does not refer to some third person who ultimately may be benefited by the enforcement of the statute of limitations.

Even if it be conceded, as contended by appellant, that by the use of the word "whenever" in the beginning of the statute and the omission of any modifying or limiting adjective to the words "promise" and "promisor," the meaning is broad enough to include administrators, executors, heirs, distributees, devisees and legatees, it will not avail appellant in this case, as will be more fully developed later. Such a construction of the statute would tend to cause delay and create confusion in the speedy and orderly administration

of estates and, to some extent, would be in conflict with the construction that this court has uniformly placed upon the provisions of Code, secs. 5813, 5406 and 5561.

The broader question involved is whether an oral promise not to plead the statute, made before the obligation is actually barred, is sufficient under Code, sec. 5821, to toll the statute of limitations.

■ Statutes which are not inconsistent with one another and which relate to the same subject matter are held to be *in pari materia* and should be construed together. *Mitchell v. Witt,* 98 Va. 459, 36 S. E. 528. The subject matter under consideration is the effect a subsequent promise has on the statute of limitations. Sec. 5810 is the statute of limitations. Secs. 5812, 5813 and 5821 set forth the conditions and circumstances under which the provisions of 5810 shall not be applied. Sec. 5821 is comparatively new (adopted in 1919). The provisions of 5812 have been in force for more than a hundred years and have been applied by this court in a long line of cases. Review of a few of these cases is pertinent to show the settled law of this Commonwealth at the time the statute in question was adopted.

■ Even before the statutory enactment requiring a new or subsequent promise to be in writing, this court held "that the subsequent promise or acknowledgment, to take the case out of the statute, ought to be such a one as if declared upon would support an action of itself; that is, it must be an express promise to pay, or such an acknowledgment of a balance then due, unaccompanied by reservations or conditions, as that a jury ought to infer from it a promise to pay." *Aylett's Ex'r v. Robinson,* 9 Leigh (36 Va.) 45. *Sutton v. Burruss,* 9 Leigh (36 Va.) 381, 33 Am. Dec. 246; *Bell v. Morrison,* 1 Pet. (26 U. S.) 351, 7 L. Ed. 174.

In *Sutton v. Burruss,* 9 Leigh (36 Va.) 381, 385, 33 Am. Dec. 246, Judge Cabell, in a concurring opinion, said: "It was well said by Judge Story, in *Bell v. Morrison,* 1 Pet. [351], 360 [7 L. Ed. 174], that the statute of limitations was 'intended to be, emphatically, a statute of repose. It is a wise and beneficial law, not designed merely to raise

presumption of payment of a just debt, from lapse of time, but to afford security against stale demands, after the true state of the transactions may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses.' If this principle be correct (and I believe it to be incontrovertibly so) no promise which is founded merely on the consideration of the old debt, and which still leaves the party exposed to the inconveniences which the statute was intended to remedy, ought to revive the old debt, and take the case out of the statute."

Following these decisions, the General Assembly in 1838 adopted a statute providing that such subsequent promise, or acknowledgment from which a promise of payment might be implied, must be in writing to be enforceable. The exact provision was: "But no promise, except by writing as aforesaid, shall take any case out of the operation of the said fifth section (in which the period of limitations is stated), or deprive any party of the benefit thereof." Code of 1849, ch. 149, section 7.

In *Layman* v. *Layman*, 171 Va. 317, 320, 198 S. E. 923, 925, we said: "Lord Mansfield held that under the statute, lapse of the time stated in the acts of limitations raised a presumption of payment, which, like other presumptions, might be repelled by evidence, and hence that a new promise of the debtor, whether express or implied, was only evidence of the pre-existing debt and gave no new cause of action. Later this theory, both in England and America, was overturned, and the statute was construed to be one of repose, and the new promise was construed as a new contract and actionable as such."

Judge Burks, the elder, in *Dinguid* v. *Schoolfield*, 32 Gratt. (73 Va.) 803, 811, said that "the promise, to be sufficient to take a case out of the statute, should be made directly or mediately to the creditor, or at least for his benefit, so that he may be able to maintain an action upon it. It is said that the declaration or admission to a third person is deemed insufficient, not so much because the acknowledgment is made to a stranger as because there is no sufficient evidence

of an intention to contract." See *Holladay* v. *Littlepage*, 2 Munf. (16 Va.) 316; *Bowles' Ex'r* v. *Elmore's Adm'x*, 7 Gratt. (48 Va.) 385; *Layman* v. *Layman, supra;* Burks Pl. & Pr. (2d Ed.) 411-413.

In *Morris* v. *Lyon*, 84 Va. 331, 333, 4 S. E. 734, 735, Judge Lewis, speaking for the court, said: "The only way in which the operation of the statute (of limitations) can be avoided, in any case, is by one or the other of the following circumstances: 1, By a subsequent written acknowledgment or promise *to pay* money, signed by the party to be charged or his agent; 2, By the existence of certain disabilities on the part of the plaintiff; 3, By certain attempts on the part of the defendant to evade the action, as where, having before resided in this State, he departs therefrom or absconds or conceals himself, or by any other indirect ways or means obstructs the plaintiff in bringing his action; in all of which cases the time during which such obstruction has continued is not computed as a part of the time prescribed by the statute; * * * .

"These are the only exceptions restrictive of the operation of the statute which the legislature has seen fit to make, and for the courts to add to the number would be to assume legislative authority. Code 1873, ch. 146; 4 Min. Inst., 510; 1 Rob. (old) Pr. 100; 1 Rob. (new) Pr. 581; *A'Court* v. *Cross*, 3 Bing. 329 (11 Eng. C. L. 124); *Oothout* v. *Thompson*, 20 Johns. (N. Y.) 277; *Bickle* v. *Chrisman*, 76 Va. 678."

In *Liskey* v. *Paul*, 100 Va. 764, 768, 42 S. E. 875, 877, the facts relied upon to toll the statute were that the defendant promised to make a settlement of the accounts with plaintiff, stating that he would settle fairly and would not plead the statute of limitations. Judge Buchanan, speaking for the court, said: "Section 2922* of the Code provides within what period demands like those sued on must be brought. If they are not brought within that period, it would be frittering away the statute to allow the action to

---

*Evidently section 2920 is intended, which is 5810 of the Code of 1919.

be brought after the time prescribed, unless the plaintiff can show that his case is one which the Legislature has declared shall be excepted."

Sec. 5821, with its rather peculiar wording, was drawn by the Code revisors of 1919 with the full knowledge of the emphatic and positive statements contained in the cases cited. The entire statute contains only two sentences. The meaning of its first sentence, stated in positive instead of negative language, is that no oral or written promise not to plead the statute of limitations shall be permitted to operate a fraud upon the promisee. The second sentence provides that: "In all other cases an unwritten promise not to plead the statute shall be void, and a written promise not to plead it shall have the effect of a promise to pay the debt or discharge the liability."

The effect of a subsequent written promise to pay an old debt, or a written acknowledgment from which a promise to pay the old debt may be implied, is to revive the period of limitation of the original obligation. The new period of limitation begins to run from the date of the subsequent promise or acknowledgment. *Ingram* v. *Harris*, 174 Va. 1, 5 S. E. (2d) 624. The last sentence in sec. 5821, in express terms, places the promise not to plead the statute of limitations on the same plane as a promise to pay the debt; that is, such promises must be in writing to be enforceable.

There appears to be no logical reason for the Code revisors to have placed the promise not to plead the statute, in one part of the section, on the same plane with the subsequent promise to pay the debt, and in another part of the same section place the promise not to plead the statute on a higher and a different plane. An express promise to pay a debt is just as solemn an obligation as an express promise not to plead the statute of limitations against such debt. The moral obligation in one is as strong as the moral obligation in the other.

For more than a century no oral promise to pay an obligation barred by the act of limitation has been enforceable in

this Commonwealth. Prior to the adoption of the Code of 1919, a promise, whether oral or written, not to plead the statute of limitations—unless the written language was broad enough to include an acknowledgment of the debt from which a promise to pay might be implied—was not enforceable. It was the evident purpose of the Code revisors, in drafting the provisions of sec. 5821, to put the two classes of promises on the same plane, and to make one promise as valid as the other, and to attach to each the same dignity and importance.

Appellant further contends that the allegations of his bills brings his case within the terms of the statute, because a failure to enforce the oral promise of the devisee not to plead the statute "would operate a fraud on" him.

Judge Buchanan, in *Craufurd's Adm'r* v. *Smith's Ex'r*, 93 Va. 623, 631, 23 S. E. 235, 237, 25 S. E. 657, summed up the law relating to fraud and the statute of limitations in these words: "No lapse of time, no delay in bringing the suit, however long, will defeat the remedy in cases of fraud or mutual mistake, provided the injured party, during all this interval, was ignorant of the fraud or mistake without fault on his part."

The allegation of fraud in the case under consideration is the unfulfilled oral promise to pay the debt, and the broken promise not to plead the statute of limitations. The general rule is that fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. *O'Dell* v. *Appalachian Corp.*, 153 Va. 283, 149 S. E. 487, 68 A. L. R. 629; Note 51 A. L. R. 49; Note 91 A. L. R. 1296; 23 Am. Jur. 774, 775. The reasons supporting this general rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. The very nature of a promise to do something in the future is such that its truth or falsity, as a general rule, cannot be determined at the time it is made.

In *Moore* v. *Gregory*, 146 Va. 504, 523, 131 S. E. 692, 697, it is said: "Actual fraud is intentional fraud; it consists in deception, intentionally practiced, to induce another to part with property or to surrender some legal right and which accomplishes the end designed." The unfulfilled oral promise to pay a just obligation, made before or after the bar of the statute, is not enforceable. The unfulfilled oral promise not to plead the statute of limitations belongs in the same category. The same construction, for conformity, should be placed on the two statutes dealing with the two classes of promises. If either promise is accompanied by indicia of fraud in its generally accepted legal sense, then neither is allowed to defeat the claim of the defrauded party.

In other words, "fraud"—as used in the phrase, "will operate a fraud upon the promisee"—"must relate to a present or a pre-existing fact" and cannot be established by allegation or proof of a non-fulfilled, naked, oral promise. This construction of the first sentence in sec. 5821 is in accord with the clear meaning of the last sentence, and renders the entire provision reasonably clear. Such construction likewise conforms to the construction this court has repeatedly placed on other statutes dealing with the same subject; namely, secs. 5812, 5813 and 5561. It applies the general rule to construe the words which the Legislature has used in such manner as will advance the intention of the act, prevent inconvenience, and avoid conflict with settled policy.

This conception of the statute renders efficacious the oft-quoted views of Mr. Justice Story, expressed in *Bell* v. *Morrison*, 1 Pet. 351, 362, 7 L. Ed. 174, as follows: "It may be, that in this manner, an honest debt may sometimes be lost, but many unfounded recoveries will be prevented; and viewing the statute in the same light in which it was viewed by English judges, at an early period, as a beneficial law, on which the security of all men depends, we think, its provisions ought not to be lightly overturned; and that no creditor has a right to complain of a strict construction, since

it is only by his own fault and *laches,* that it can be brought to bear injuriously upon him. And if the early interpretation had been adhered to, that nothing but an express promise should take a case out of the statute, it is far from being certain, that it would not have generally been in promotion of justice."

The views stated herein are believed to be sound, notwithstanding the contrary views ably expressed in the majority opinion of the Circuit Court of Appeals for the Fourth Circuit in *Tucker* v. *Owen,* 94 F. (2d) 49. However, the strength of that case, as an authority to be followed, is weakened by the strong dissenting opinion of Judge Northcott and the well-stated opinion of the district judge, Robert N. Pollard, both of whose conclusions are in accord with those expressed here.

For the reasons stated, the decrees of the trial court are

*Affirmed.*