## CIRCUIT COURT OF FAIRFAX COUNTY

Gary Kieft
and Cindy Orser

v.

Ronald D. Becker,
Becker Interiors, Inc.,
Stephen F. Brooks,
William A. Lahait,
Keith F. Ardinger,
and A & L Construction

January 31, 2002

Case No. (Law) 194674

By JUDGE KATHLEEN H. MACKAY

The Amended Motion for Judgment filed in this case alleges that a very expensive home improvement project went terribly awry. The Plaintiffs have named everyone involved in the project as Defendants (all individuals shall be referred to by their last names).

Since the amended motion was filed on August 3, 2001, the various Defendants have filed demurrers and the case has been gradually trimmed and tightened in preparation for trial. Brooks as an individual was struck from Count IV alleging Civil Conspiracy, and Brooks and Becker as individuals were struck from Count V alleging Negligence Per Se. See Judge Wooldridge's order of October 5, 2001, and Judge Keith's order of October 12, 2001. The trial date is March 4, 2002.

The Demurrer that is the subject of this opinion is filed with regard to A & L Construction and its partners Lahait and Ardinger and was argued in Court

on November 11, 2001. The Court took this matter under advisement. Attorneys representing the other Defendants made no appearance at oral argument.

## Facts

The Plaintiffs allege that they entered into a contract with Becker Interiors to do substantial construction on their house, that Becker Interiors did not perform competently, and that, in negotiating the contract, it misrepresented its qualifications. Brooks was the subcontractor who actually did the alleged shoddy work.

A & L's involvement with the project is very specific, and it is these very particular facts which make the legal issues raised by the Demurrer complex. A & L never had any person-to-person contact with the Plaintiffs, and Plaintiffs did not know of A & L's involvement as they entered into the relevant contracts. (AMJ at ¶ 32.) A & L did not supervise any work on the property, nor did A & L have any actual involvement with the project on site. (AMJ at ¶ 31.) Plaintiffs allege that:

> A & L knowingly allowed contractor to obtain a permit under its name which A & L never intended to perform. This occurred after Becker and Brooks spoke with Lahait in the March to May 2000 timeframe, informing Lahait that the name of a licensed contractor was needed to process a permit. Lahait agreed that A & L's name could be placed on the building permit application. ... Neither contractor, Becker, Brooks, nor A & L ever disclosed A & L's involvement. When Gary Kieft discovered A & L's involvement after the formation of contracts 9 and 10, he asked Brooks about A & L. Brooks told Kieft that he was a partner at A & L. State records indicate this representation is not true.

(AMJ at ¶ 32.)

In addition, Lahait, a partner of A & L, signed a building permit amendment. (AMJ at ¶ 52.) Plaintiffs allege that Becker, Brooks, and A & L knew that Becker Interiors or "contractor" was not a class A contractor and that the project or "work" required a class A contractor to perform. (AMJ at ¶ 67.) Paragraphs 32, 52, and 67 of the Amended Motion for Judgment set forth the essence of the case against A & L and its principals.

### Count I: Actual Fraud
### and Count II: Constructive Fraud

This Court overrules the Demurrer filed by A & L, Lahait, and Ardinger as to Counts I and II.

"To sustain a claim of actual fraud, the Plaintiff must prove a false representation, of a material fact, made intentionally and knowingly with the intent to mislead, reliance by the party misled, and resulting damage. 'Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with intent to mislead but is made innocently or negligently although resulting in damage to the one relying on it'." *ITT Hartford Group, Inc v. Virginia Fin. Assoc. Inc.*, 258 Va. 193, 203 (1999), citing *Patrick v. Summers*, 235 Va. 452, 454 (1988), quoting *Sable v. Herman*, 175 Va. 489, 509, 9 S.E.2d 459 (1940). Further, fraud must be proved not by a preponderance of the evidence but by clear and convincing evidence. *Id.* 258 Va. 193 at 203.

The Amended Motion for Judgment does not allege that the Plaintiffs had any contact whatsoever with A & L, Lahait, or Ardinger. A & L made no representations to the Plaintiffs. Indeed, the Plaintiffs freely admit that "no principal of A & L ever supervised any work on the Property, and A & L had little, if any, involvement in the work." (AMJ at ¶ 31.)

Under traditional fraud analysis, this would be the end of the discussion. No cause of action for fraud would lie. But Plaintiffs put forth the argument that, by placing its name on the building permit application, A & L aided and abetted a fraud and it can be liable under the fraud claim – this, despite having made no misrepresentations to the Plaintiffs directly.

Plaintiffs cite *Daingerfield v. Thompson*, 74 Va. 136 (33 Gratt.) (1880), for this proposition. In *Daingerfield* two rowdy miscreants broke into a tavern late one night and one defendant shot the tavern owner at the instigation of the other defendant, Daingerfield. The Court concluded that both defendants were guilty of trespass and that, with regard to the assault, the defendant Daingerfield "was a prominent actor." *Id.*, 74 Va. at 150. The Court found Daingerfield to be culpable both on the trespass and the assault stating:

> The law is well settled that any person who is present at the commission of a trespass, encouraging or inciting the same by words, gestures, looks, or signs, or who, in any way or by any means, countenances or approves the same, is in law deemed to be an aider and abettor and liable as a principal.

*Id.*, 74 Va. at 151.

·It would appear that the coordinated joint action described in *Daingerfield* bears little resemblance to the facts alleged in this case. In *Daingerfield* the exchange between both defendants and the plaintiff was direct, face-to-face, and unmistakable. In the case at hand, this kind of clarity does not exist.

But *Daingerfield* is not the only case in Virginia that relies on what Plaintiffs characterize as the minority rule that "accessory parties" in tort actions are liable as if they were the principals. (See Plaintiffs Memorandum in Opposition, p. 3.)

In *Patteson v. Horsley*, 70 Va. 263 (29 Gratt.) (1877), the Supreme Court found a breach of trust by a trustee. The trustee had exchanged trust property without the written consent of the trust beneficiary in violation of the express terms of the trust. The exchange had been made to benefit the appellee, an individual by the name of Gustavus A. Hancock. The Court opined that the exchange:

> was a breach of trust in the said trustee, in which the said Hancock participated, having notice, actual or constructive, of the facts which constituted such breach of trust, and the same have been committed at his insistence and for his benefit; and that the said trustee and the said Hancock are therefore liable to the beneficiaries in the said trust for all damages sustained by them in consequence of the said breach of trust.

*Id.*, at 270.

The amended motion is replete with allegations that A & L had notice of the relationship between the Plaintiffs and Becker and Brooks and had notice of the construction project and its demands. (AMJ at 32.) Admittedly, there is no allegation that A & L benefited from their acquiescence in the building permit scheme.

In *Tysons Toyota, Inc. v. Globe Life Ins. Co.*, 1994 U.S. App. LEXIS 36692, the United States Court of Appeals for the Fourth Circuit relying on *Patteson* recognized that a third party could aid and abet a corporate officer's breach of fiduciary duty. The essence of the claim in that case was that a corporate officer was able to steer corporate business to an insurance company in which he had a financial stake. The District Court had dismissed plaintiff's claim of aiding and abetting for failure to state a claim opining that plaintiffs had failed to allege that the "defendants either actively and forcibly aided and participated in the injury, or that they were present at the injury, aiding, encouraging, and inciting the same." *Id.*, at 12, citing the District Court's Memorandum Order 4, March 11, 1993.

The District Court, in dismissing the claim, was relying on *Daingerfield*, making a very, it would seem, common-sense analysis - one that this Court was initially inclined to make. But it is very difficult to explain away the reasoning in *Patteson* and *Tysons Toyota*. If it is possible to aid and abet a claim of a breach of fiduciary duty, why is it not possible to aid and abet a fraud? Plaintiffs certainly have alleged both misrepresentation and reliance and, even though Defendant A & L is one step removed from a face-to-face relationship with the Plaintiffs, it aided and abetted.

Defendants' argument that Plaintiffs are restricted to damages under a breach of contract claim has no merit. This is not a case where the Plaintiffs are piling on, so to speak, where the essential relationship between two parties is a contractual one. *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553 (1998). The Plaintiffs have no contractual relationship with A & L. Allegations of fraud or conspiracy constitute Plaintiff's claim against Defendant A & L.

### Count III: Violation of the Virginia Consumer Protection Act

This Court overrules the Demurrer filed by A & L, Lahait and Ardinger as to Count III alleging a violation of the Virginia Consumer Protection Act (The Act).

The question presented in this Count is similar to the one presented by Counts I and II. This is, does the fact that A & L had no direct relationship with the Plaintiffs mean that Plaintiffs cannot rely on the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq.*

In interpreting the Act, the Court must limit itself to a clear reading of the statute. There is no doubt that the Act is remedial in nature and should be "construed liberally, so as to suppress the mischief and advance the remedy in accordance with the legislature's intended purpose." *H. D. Oliver Funeral Apartments, Inc. v. Dignity Funeral Services, Inc.*, 964 F. Supp. 1033, 1038 (E.D. Va. 1997).

A & L is a "supplier" under the Act in that it "advertises, solicits, or engages in consumer transactions." *Id.*, at § 59.1-198. Plaintiffs have alleged facts that would place A & L within this definition.

The argument against making too much of these alleged facts is the relationship, or lack thereof, between A & L and the Plaintiffs. The definitional section of the Act appears to be describing transactions that occur between a consumer and a supplier of services. The term "individual" is used repeatedly as describing one half of a transaction. *Id.* This can lead one to conclude that privity of contract is a threshold requirement. Even the expansive definition of "services" states that the work performed for a supplier

by an agent (read A & L) results in "charges or costs for such work" being transferred by the supplier to the consumer. *Id*. No such charges or costs are alleged to have been received by A & L.

I would argue that a strict reading of the definitional section is overwhelmed by the very expansive definition of "prohibited practices." *Id.*, at § 59.1-200. The introductory language to this section of the statute is extremely broad stating: "The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful." *Id*. Assuming that A & L is a "supplier" under the Act and that a "consumer transaction" is at issue, the Act sets out thirty-four examples of prohibited practices. The first six examples describe misrepresentations of all sorts, almost all of which can be said to fit within the allegations of this case (with the exception of the fourth). Number fourteen would seem to clinch the argument describing as a prohibited practice: "using any other deception, fraud, false pretense, false promise, or misrepresentation in connection a with consumer transaction." *Id*.

To limit the scope of this language by applying the concept of privity given the expansive listing of fraudulent practices would seem to be inappropriate. It is for that reason that the Demurrer is overruled.

### Count IV: Civil Conspiracy

This Court overrules the Demurrer filed by A & L, Lahait and Ardinger as to Count IV. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985). There must be a resulting injury. *Gallop v. Sharp*, 179 Va. 335, 338 (1942).

I need not repeat the alleged facts in this case. The Plaintiffs contend that the underlying bad act in this case is the misrepresentation made by A & L to Fairfax County that it was to be responsible for a project for which it had no intention of actually being responsible. Arguably, the misrepresentation enabled Becker Interiors to go forward with a project it did not have the expertise to perform competently.

Judge Horne, in his opinion in *Citizens for Fauquier Co. v. SPR Corp.*, 37 Va. Cir. 44 (1995), writes as good an analysis as any as to what appears to be the law in Virginia as to what kind of bad act must underlie the claim of civil conspiracy.

It is well-established Virginia law under *Gallop v. Sharp* that the "gist of the civil action of conspiracy is the damage caused by the acts committed in furtherance of the formal conspiracy" that "the basis of the action is the wrong which is done under the conspiracy and which results in damage to the plaintiff."

*Id.*, at 50, citing *Gallop v. Sharp*, 179 Va. at 335.

Judge Horne describes this analysis as applying an actionability standard, this is, "where there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Id.*, at 50.

Plaintiffs allege facts that satisfy that standard. A & L's overt act of misrepresentation is an essential part of the fraud alleged in Counts I and II. As such, this Count survives Demurrer.

### Count V: Negligence Per Se

This Court overrules the Demurrer filed by A & L, Lahait, and Ardinger as to Count V. A properly pleaded claim of negligence per se contains the following allegations: (1) that defendant violated a statute enacted for public safety, (2) that plaintiff belongs to the class of persons for whose benefit the statute was enacted, and that the harm that occurred was the type against which the statute was designed to protect, (3) that the statutory violation was the proximate cause of plaintiff's injury. See *Halterman v. Radison Hotel Corp.*, 259 Va. 171, 176, 523 S.E.2d 823 (2000). The plaintiffs have pleaded the above elements. (AMJ at 105-08.)