# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Catherine B. Corish

v.

Gerald W. Northcutt
and Panther Partners, L.L.C.

May 31, 2013

Case No. 2010-153

By Judge Edward L. Hogshire

On April 30, 2010, Catherine B. Corish filed this action against Gerald W. Northcutt and Panther Partners, L.L.C., alleging seven counts arising from the construction of a building on a parcel of property owned by Plaintiff and located in the City of Charlottesville. An amended complaint was filed on March 21, 2011. The allegations are as follows: Breach of Contract (Count I), Quasi Contract (Count II), Breach of Joint Venture Agreement (Count III), Breach of Personal Services Contract (Count IV), Breach of Fiduciary Duty (Count V), Fraud (Count VI), and Intentional Interference with Business Expectancy (Count VII).

On April 28, 2011, Defendant filed a demurrer to all counts, as well as a Special Plea of the Statute of Frauds with respect to Counts I and IV. Following the submission of memoranda from counsel, the court heard oral arguments by counsel on May 8, 2013. This opinion addresses only the demurrer to all counts. For reasons set forth below, the Court will sustain the Defendant's Demurrer with respect to Counts V and VI, but overrule with respect to Counts I, II, III, IV, and VII.

## Summary of Facts

The facts are derived from the Amended Complaint.

Plaintiff Catherine Corish is a real estate broker and owner of a parcel of real property in the City of Charlottesville. Am. Compl. ¶ 1. Defendant Gerald Northcutt is a mortgage broker. *Id.* ¶ 2. The parties were long-time business associates and friends. *Id.* ¶ 6. In previous business interactions, the Defendant even provided mortgage services for Plaintiff and her clients. *Id.* ¶ 21. Plaintiff alleges that, in early 2007, the parties entered into discussions whereby the Plaintiff would construct a building for the Defendant on the property she owned. *Id.* ¶¶ 6-7. Once constructed, Defendant would either purchase the building or enter into a long-term lease, depending on whether or not the property could be subdivided. *Id.* ¶¶ 7-8.

Plaintiff alleges she agreed to erect the building according to the Defendant's specifications only if he was certain it would be his building because otherwise she would have built a structure with a residential usage option. *Id.* ¶ 10. Plaintiff proposed the plan for the building, but Defendant stated that he wanted and was willing to pay for a large building with substantial changes. *Id.* ¶¶ 11-12. The parties signed a letter of intent with their general agreement with the plan to form a more detailed description once questions regarding lot division and condominiumizing were answered. *Id.* ¶¶ 18-19. Plaintiff, in response to Defendant's preference for building as quickly as possible, undertook substantial work and time commitment. *Id.* ¶ 20. Defendant, in response, agreed to either purchase the building for approximately $1,000,000.00, or enter into a long-term lease, or enter an agreement on other terms in accordance with the standard custom builder pricing structure and the costs of the upgrades. *Id.* ¶ 23.

Defendant, with input from the Plaintiff, interviewed and selected the construction superintendent, Alan Hamilton. *Id.* ¶ 28. Hamilton was of the understanding that the Defendant was the decision maker and the building was to be built to his specifications. *Id.* ¶¶ 28-29. Hamilton complied with these instructions by conducting many remodels and changes to portions of the construction. *Id.* ¶ 29. Plaintiff alleges that Defendant was involved at every step of the project and that he exercised extensive control and direction by making decisions regarding the layout of the building, the inclusion of a basement, and the selection of interior items. *Id.* ¶¶ 31, 34, 35, 40. During the time of construction, Plaintiff alleges that Defendant was aware of the increased costs in response to each of his decisions, and Defendant assured her that he would reimburse her for said costs. *Id.* ¶¶ 38-39.

As construction neared completion, Defendant asked Plaintiff about the possibility of leasing a portion of the building, to which Plaintiff agreed. *Id.* ¶¶ 48-49. There was a handshake deal and Plaintiff presented Defendant with a written version of the agreement, but Defendant delayed in signing the lease. *Id.* ¶ 56. When Plaintiff requested the signed lease back, Defendant

acknowledged that he had an obligation to proceed with the agreement, but explained that there were now cheaper options available to him. *Id.* ¶¶ 51-53. When it came time for the Defendant to take possession of the property, he failed to do so. *Id.* ¶ 54.

## Standard of Review

A demurrer tests whether a motion for judgment states a cause of action on which relief can be granted. *Grossman v. Saunders*, 237 Va. 113, 119, 376 S.E.2d 66, 69 (1989). In ruling on a demurrer, the court considers the legal sufficiency of the pleadings, not disputed facts. *Welding, Inc. v. Bland Cnty. Service Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001). For the purposes of a demurrer, the court considers the facts in the light most favorable to the plaintiff. *Id.*

On a demurrer, the facts admitted are those expressly alleged, those that are impliedly alleged, and facts that may fairly and justly be inferred from the facts alleged. *Luckett v. Jennings*, 246 Va. 303, 307, 435 S.E.2d 400, 402 (1993) (citing *Palumbo v. Bennett*, 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991); *Bowman v. State Bank*, 229 Va. 534, 536, 331 S.E.2d 797, 798 (1985)). As long as the claim contains sufficient allegations of material fact so as to inform the Defendant of the nature and character of the claim, it will withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va., 22, 24, 431 S.E.2d 277, 279 (1993). Even a flawed complaint will withstand demurrer if it is drafted in such a way that the defendant is on notice of the "true nature" of the claim and the allegations may be supplemented in discovery. *Fein v. Payandeh*, 284 Va. 599, 608, 734 S.E.2d 655, 660 (2012). But the pleadings must set forth sufficient facts constituting a foundation in law for the judgment sought, not simply conclusions of law. *Kitchen v. City of Newport News*, 275 Va. 378, 385, 657 S.E.2d 132, 136 (2008) (citing *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006)).

## Analysis

### A. *Breach of Contract*

The Defendant argues that the Amended Complaint must fail because the Plaintiff has not alleged facts sufficient to constitute a breach of contract claim. The elements of breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of the obligation, and (3) an injury or harm to the plaintiff caused by the defendant's breach. *Ulloa v. QSP, Inc.*, 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006) (quoting *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004)). For a contract to be enforceable there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances. *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364, 281 S.E.2d 818, 820

(1981). However, the Supreme Court of Virginia has consistently held that mere agreements to agree in the future are too vague and indefinite to be enforced. *W. J. Schafer Assocs., Inc. v. Cordant, Inc.*, 254 Va. 514, 493 S.E.2d 512 (1997); *Allen*, 222 Va. 361, 281 S.E.2d 818; *Kay v. Professional Realty Corp.*, 222 Va. 348, 351, 281 S.E.2d 820 (1981).

In order to determine whether an agreement constitutes an enforceable contract or an agreement to agree, it is necessary to consider whether the parties agreed on the requisite essential terms and whether the conduct of the parties and the surrounding circumstances establish the parties' intent to enter into a contract. *High Knob v. Allen*, 205 Va. 503, 507-08, 138 S.E.2d 49, 53 (1964). The essential terms of a contract for services are (1) the nature and scope of the work to be performed, (2) the compensation to be paid for that work, (3) the place of performance, and (4) the duration of the contract. *EG&G, Inc. v. Cube Corp.*, 63 Va. Cir. 634, 651 (2002) (citing *Mullins v. Mingo Lime & Lumber Co.*, 176 Va. 44, 50, 10 S.E.2d 492, 494 (1940)). In Virginia, the law favors upholding contracts and does not favor declaring contracts void for indefiniteness and uncertainty, especially when there has been partial performance. *Reid v. Boyle*, 259 Va. 356, 367, 527 S.E.2d 137, 367 (2000); *Smith v. Smith*, 43 Va. App. 279, 287-88, 597 S.E.2d 250, 254 (2004). In order to find indefiniteness, the agreement must reach a point where construction is futile; it is a last resort. *Smith*, 43 Va. App. at 288, 597 S.E.2d at 254.

The Supreme Court of Virginia held that a contract may be altered after its initial construction. *Reid* 259 Va. at 370, 527 S.E.2d at 369-70. One way to demonstrate modification of an agreement is for the parties to manifest, by their conduct, a shared intent to change the terms. *Id.* However, the said intent must be shown by "clear, unequivocal, and convincing evidence, direct or implied." *Id.* (quoting *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983).

Turning to the present case, the Defendant argues that there was merely an agreement to agree and not an enforceable contract because there was not mutual intent to form an agreement, specifically with respect to the purchase price. In order to determine whether there is an agreement, it is necessary to determine if the requisite terms of the contract were pleaded and the facts demonstrate the parties' commitment to be bound with respect to those terms. With respect to the requisite terms, Plaintiff alleges that the nature and scope of the work was Defendant's plan to construct a larger building with substantial changes and obtain exactly what he wanted. Am. Compl. ¶ 12. The compensation that Defendant agreed to pay was the standard custom builder price for the project, including the cost of the upgrades, which would total approximately $1,000,000.00. *Id.* ¶ 23. The place of performance was on the Plaintiff's property. *Id.* ¶ 7. The duration of the contract was until the building was completed, at which point the

Defendant would take possession of it either by purchase or lease. *Id.* Therefore, Plaintiff does adequately allege the requisite terms.

Second, it is necessary to consider whether there was intent to be bound to the terms discussed above manifested itself through the actions of the parties. Plaintiff alleges that the commitment of the parties to the agreement is demonstrated by the fact that Defendant communicated multiple times that he was determined to purchase or lease the building upon completion. *Id.* ¶ 22. In addition, Defendant was involved at "every step of the project, exercising extensive direction and control," and agreed to pay for the cost of upgrades and changes along the way. *Id.* ¶¶ 31, 38, 39. Moreover, Plaintiff alleges that Defendant made representations to the supplies and material providers that the building was his. *Id.* ¶ 44. Finally, Defendant acknowledged his obligation to proceed under the parties' agreement. *Id.* ¶ 53. Therefore, the Plaintiff did allege facts that the Defendant, through his actions, manifested his intent to be bound to the terms of the agreement. Whether the original agreement was modified by the parties during the construction of the building and, thus, is no longer relevant is a question of fact. Defendant's Demurrer is overruled on the count of breach of contract.

## B. *Quasi Contract*

The Defendant contends that the Plaintiff has not alleged facts sufficient to state a claim for quasi contract. Quasi contract rests on the notion that no person should be allowed to enrich himself at the expense of another. *Kern v. Freed Co.*, 224 Va. 678, 680, 299 S.E.2d 363, 365 (1983). Unlike contract, this cause of action is not based on the assent of the parties. *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 142, 300 S.E.2d 763, 766 (1983). Liability exists from an implication of law that arises from the facts and circumstances, independent of agreement. *Id.* The Supreme Court of Virginia has rejected the argument that the party charged in quasi contract must have received a benefit for there to be recovery. *Id.* at 144, 300 S.E.2d at 765 (citing *Hendrickson v. Meredith*, 161 Va. 193, 202, 170 S.E. 602, 605 (1933)). The Court based its decision on the language of *Hendrickson*, which provided that the appropriate measure of recovery under quasi contract is the "reasonable value of the services performed, and not the amount of benefit which actually accrued," and held that it would be inconsistent with this language to require a benefit. *Id.* (quoting *Hendrickson*, 161 Va. at 202, 170 S.E. at 605).

The Defendant maintains that there was no cause of action for quasi contract because the Plaintiff failed to allege a benefit that the Defendant received. However, a benefit is not required for a claim for quasi contract; therefore, Defendant's Demurrer is overruled on the count of quasi contract.

## C. *Breach of Joint Venture Agreement*

The Defendant next argues that Plaintiff failed to allege facts sufficient to establish the existence of a joint venture. In Virginia, a joint venture "is established by contract, express or implied, where two or more persons undertake a specific business enterprise for profit, with each to share in the profits or the losses and each to have a voice in the control and management." *Ortiz v. Barrett*, 222 Va. 118, 131, 278 S.E.2d 833, 840 (citing *Smith, Adm'r v. Grenadier*, 203 Va. 740, 744, 127 S.E.2d 107, 110 (1962)). Whether or not a set of circumstances gives rise to a joint venture is typically a question for the jury. *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 539 (4th Cir. 1988) (quoting *Smith, Adm'r v. Grenadier*, 203 Va. at 744, 127 S.E.2d at 110 (1962)).

In order to survive a demurrer motion, Plaintiff must allege facts that meet the three elements necessary to constitute a joint venture, which include the existence of a contract, expectation of sharing in the profits or losses, and both parties having a voice in the control and management of the project. Considering each of these factors individually, the Plaintiff did allege facts concerning the existence of a contract sufficient to withstand a demurrer challenge; they are discussed previously in Section I.

The second condition requires that both parties intended to share in the profit or losses. Plaintiff contends that, prior to the Defendant's participating in the project, she had a plan, but had not implemented it because the market conditions were not appropriate. Am. Compl. ¶ 13. In addition, Plaintiff claims that she would not have built the project with Defendant's specifications unless the Defendant planned on leasing or buying it. *Id.* ¶ 10. The Defendant was aware of these concerns and nonetheless decided to proceed with building the project with his changes. *Id.* ¶ 12. A reasonable inference from the alleged facts is that both parties would only undertake such a specialized project with a hope of earning a profit. The Plaintiff hoped to profit from the Defendant's purchase or lease of the project and the Defendant hoped to profit from possession a building constructed to his specifications. These allegations satisfy the requirement that both parties hoped to profit from the venture.

Turning to the third element of both parties having a voice and control in management, the Plaintiff describes various circumstances where the Defendant made decisions, exercising control, regarding the layout of the building, the inclusion of a basement, and the selection of interior items. *Id.* ¶¶ 31, 34, 35, 40. Plaintiff alleges that she also provided input in decisions, such as whom to hire as the construction superintendent. *Id.* ¶ 28. Because these allegations are enough to give the Defendant notice of the true claim regarding the circumstances giving rise to the joint venture, the Defendant's Demurrer is overruled on the count of breach of joint venture agreement.

## D. *Breach of Personal Services Contract*

The Defendant contends that the Amended Complaint must fail because the Plaintiff has not alleged facts sufficient to show the existence of a personal services contract. In Virginia, the law on personal services contracts is relatively sparse and does not draw a sharp distinction between personal services contracts and non-personal services contracts, however, typically a personal services contract is defined as "a contract that is based on a relationship of trust and confidence or that requires a party to exercise skill, judgment, or expertise." *Fransmart, L.L.C. v. Freshii Dev., L.L.C.,* 768 F. Supp. 2d 851, 860 (E.D. Va. 2011) (citing *McGuire v. Brown,* 114 Va. 235, 242, 76 S.E. 295, 297 (1912); *Epperson v. Epperson,* 108 Va. 471, 476, 62 S.E. 344, 346 (1908)).

Because, as was previously discussed, the Plaintiff alleges sufficient facts to withstand demurrer for the breach of contract claim, the only remaining issue is whether or not the Plaintiff asserts facts that support a claim that this was one based on a relationship of trust. Plaintiff alleges that she and the Defendant were long-time business associates and friends. Am. Compl. ¶ 6. Additionally, Defendant previously provided mortgage services for Plaintiff and for her clients. *Id.* ¶ 21. These facts are sufficient to give the Defendant notice of the circumstances that establish a relationship of trust and confidence to withstand the demurrer. Defendant's Demurrer on the count of breach of personal service contract, therefore, is overruled.

## E. *Breach of Fiduciary Duty*

The Defendant contends that the demurrer should be granted because Plaintiff failed to allege sufficient matter to show the existence of a fiduciary duty through a joint venture theory. Joint venturers have a fiduciary relationship among themselves that arises from a contract, encompasses certain duties, and "begins with the opening of the negotiations for the formation of the syndicate, applies to every phase of the business which is undertaken, and continues until the enterprise has been completely wound up and terminated." *Roark v. Hicks,* 234 Va. 470, 475, 362 S.E.2d 711, 714 (1987) (quoting *Horne v. Holley,* 167 Va. 234, 239, 188 S.E. 169, 172 (1936)). The elements for breach of a fiduciary duty arising out of a contract include the existence of a duty, breach, and loss as a result of the breach. *First Health Servs. Corp. v. Baruch Defense Mktg., Inc.,* No. 15834, 1995 Va. Cir. LEXIS 1440, at *5-6 (Jan. 3, 1995) (citing *Carstensen v. Chrisland Corp.,* 247 Va. 433, 444, 442 S.E.2d 660, 666 (1994)).

However, the Supreme Court of Virginia has cautioned against turning every breach of contract into an actionable tort claim. *Richmond Metro. Auth., Inc. v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 560, 507 S.E.2d 344, 348 (1998) (affirming the judgment of the circuit court dismissing causes of action for fraud when the duty allegedly breached by the defendants

existed between parties solely by virtue of the contract). In order to avoid turning every breach of contract into a tort claim, the duty breached must be a common law duty and not one existing only because of the contract at issue. *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007). Virginia courts do not recognize a cause of action in tort if, without the agreement in question, neither party would have owed the other any of the alleged fiduciary duties that were breached. *Id*. at 207-08, 645 S.E.2d at 295.

Defendant argues the Plaintiff failed to allege adequate facts to demonstrate the existence of a joint venture; therefore, there was no fiduciary duty between the parties and, thus, there could be no breach. As discussed previously, the question of whether the circumstances gave rise to a joint venture is a question of fact; however, it does not appear that the Plaintiff has alleged enough facts to demonstrate that the Defendant took advantage of his special position to the detriment of the Plaintiff beyond merely failing to comply with the contract to buy or lease the property. Plaintiff alleges that the Defendant's "failure to either purchase or lease the Building constitutes a breach of the fiduciary duty owed by joint venturers." Am. Compl. ¶ 98. This assertion supports the notion that Defendant merely failed to perform a duty imposed by the contract between joint venturers, which does not give rise to this tortious cause of action without some other duty owed between the parties. As a result, Defendant's Demurrer is sustained on the count of breach of a fiduciary duty.

## F. *Fraud*

The Defendant argues that the Amended Complaint must fail because the Plaintiff has not alleged facts sufficient to sustain a cause of action for fraud. In Virginia, the elements of fraud are (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damages to the party misled. *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005). Claims of fraud must be pleaded with particularity, which requires the plaintiff to precisely plead the actions that encompasses the fraud. *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996).

The Supreme Court of Virginia has held that, in order to avoid having every breach of contract claim become a tort claim, it is necessary to determine of the source of the duty violated to distinguish whether a cause of action sounds in contract or tort. *Richmond Metro. Auth.*, 256 Va. at 58, 507 S.E.2d at 346. When there is a contract, if the cause for complaint arises not out of breach of the contract, but from a common law duty based on the relationship between the parties, then there is a viable tort claim. *Id*. Conversely, if the duty breached exists solely by virtue of the contract, without a common law duty, then there is not a tort claim. *Id*. Similarly, fraud

claims "must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Soble v. Herman*, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940). There is the exception in the case of fraudulent inducement where a defendant "makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008).

Defendant contends that the Plaintiff fails to allege facts that the Defendant never intended to lease or purchase the building and induced the Plaintiff to construct the building out of spite or malice. The Plaintiff does allege that the Defendant intended to mislead the Plaintiff. Am. Compl. ¶ 110. However, the Plaintiff does not allege any facts that support that conclusory allegation or any allegation regarding a fraudulent inducement by the Defendant to better his bargaining position. Because fraud must be pleaded with specificity and Plaintiff fails to allege facts of the Defendant's intentions to mislead her, the Defendant's Demurrer with respect to the count of fraud is sustained.

## G. *Intentional Interference with Business Expectancy*

Finally, the Defendant argues Plaintiff's Amended Complaint does not allege facts sufficient to state a claim of intentional interference with business expectancy. In Virginia, in order to state a claim for this cause of action, a Plaintiff must allege (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff, (2) knowledge of the expectancy by the defendant, (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy, and (4) resulting damage to the plaintiff. *Glass v. Glass*, 228 Va. 39, 51, 321 S.E.2d 69, 77 (1984). The Supreme Court of Virginia held that the first and third elements require an objective test and that the plaintiff's subjective expectation or "belief and hope" is inadequate to sustain the cause of action. *Commercial Bus. Sys., Inc. v. Halifax Com.*, 253 Va. 292, 301, 484 S.E.2d 892, 897 (1997).

Turning to the facts alleged here, with respect to the first prong, there are two issues to consider. The first issue is whether or not the Plaintiff alleged that she had a business relationship or expectancy. Plaintiff satisfies this requirement because she contends that she had a plan, prior to the Defendant's involvement, and it included constructing a building that would have an alternate residential usage option. Am. Compl. ¶¶ 10, 13. Given the market conditions, however, Plaintiff informed the Defendant that she would not build unless he was going to buy or lease the building. *Id.* ¶ 10. The second issue is whether or not the Plaintiff alleged that the expectancy had the probability of future economic benefit to the Plaintiff. The Plaintiff

does allege that, by including the option for a residential portion, she would be able to hedge against the possibility of a slow commercial rental market. *Id.* ¶ 13. The reasonable inference from this claim is that the Plaintiff would have profited from her plan that allowed for both commercial and retail use. The Plaintiff complies with the second prong when she alleges that the Defendant was aware of her plan to allow for both commercial and residential use. *Id.* ¶ 12. Without the Defendant's intentional changes to the plan, Plaintiff alleges that she would not have built a building of the nature and quality that the Defendant wanted. *Id.* ¶ 10. Finally, the damage that the Plaintiff alleges is the inability to potentially construct a building according to her pre-existing plan or at least not incur the cost of constructing the current building. *Id.* ¶ 13. Plaintiff has sufficiently alleged facts to support the claim of intentional interference with business expectancy; therefore, Defendant's demurrer is overruled on this count.

## Conclusion

For the reasons stated above, Demurrer is sustained with regard to Count V: Fraud, and Count VI: Breach of Fiduciary Duty, but overruled with respect to all the remaining counts. Plaintiff will be allowed twenty-one days in which to further amend the pleadings should she so desire.